Judge BAKER
delivered the opinion of the Court.
In accordance with his pleas, Appellant was convicted by a special court-martial of failure to obey a no-eontact order, wrongful use of cocaine, adultery, and breaking restriction in violation of Articles 92, 112a, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 912a, 934 (2000), respectively. A military judge sitting alone sentenced Appellant to a bad-conduct discharge, confinement for ninety days and reduction to pay grade E-l. The convening authority approved the sentence as adjudged and the United States Navy-Marine Corps Court of Criminal Appeals affirmed.[1] United States v. Shaw, No. NMCCA 200300312 (N.M.Ct.Crim.App. Jan. 11, 2006). Upon Appellant’s petition, this Court specified the following issue based on matters raised in his unsworn statement:
WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION BY FAILING TO INQUIRE INTO THE EFFECT THAT APPELLANT’S MEDICAL PROBLEMS HAD ON HIS ABILITY TO APPRECIATE THE NATURE AND QUALITY OR THE WRONGFULNESS OF HIS ACTS.
We conclude that the military judge did not err in this regard and affirm.
I
After the findings of guilty were announced, Appellant, with the assistance of counsel, made an unsworn statement for the military judge’s consideration on sentencing.
The part of the statement relevant to the specified issue states:
Sir, on the 20th of November 2001, I was jumped outside of the Waffle Shop out in town and robbed. I was hit in the head repeatedly with a lead pipe. I suffered two skull fractures, bruising and bleeding of the brain. I woke up several days later out of a coma to find out that I am completely deaf in my left ear, and partially blind in my left eye. I was hospitalized for about a month. Upon returning to my unit from the hospital, I went and saw the division psychiatry [sic] and was diagnosed with bi-polar syndrome because of the incident. After that I was denied convalescent leave and only given eight days annual leave for Christmas. I came back, and that’s when I started to get in trouble.
After Appellant completed his statement, his defense counsel asked him specific questions regarding the injuries he received as a result of the assault:
DC: And how long did you stay in the Veterans hospital?
ACC: I was in the Veterans Hospital for 22 days, sir.
DC: And what — did they tell you the extent of the injuries?
ACC: A contusion to the front of the brain which basically means bruising. The back of my brain was bleeding and swelling. I had an inner skull fracture on my left side, and another skull fracture on the back of my head, sir. I completely lost all my hearing in my left ear, and part of my sight in my left eye, sir.
DC: And do these injuries still effect [sic] you today?
ACC: Yes, sir.
This concluded Appellant’s unsworn statement, and the hearing proceeded to announcement of the sentence. In response to the specified issue Appellant asserts that the findings and sentence should be set aside for the military judge’s failure to inquire further into Appellant’s statement regarding his diagnosis for bipolar disorder.
*462 II
“A military judge’s decision to accept a guilty plea is reviewed for an abuse of discretion.” United States v. Eberle, 44 M.J. 374, 375 (C.A.A.F.1996) (citing United States v. Gallegos, 41 M.J. 446 (C.A.A.F.1995)). “Pleas of guilty should not be set aside on appeal unless there is ‘a “substantial basis” in law and fact for questioning the guilty plea.’ ” Id. (quoting United States v. Prater, 32 M.J. 433, 436 (C.M.A.1991)). “If an accused ‘sets up matter inconsistent with the plea’ at any time during the proceeding, the military judge must either resolve the apparent inconsistency or reject the plea.” United States v. Garcia, 44 M.J. 496, 498 (C.A.A.F.1996) (quoting Article 45(a), UCMJ, 10 U.S.C. § 845(a) (2000)); Rule for Courts-Martial (R.C.M.) 910(h)(2). “Once the military judge has accepted a plea as provident and has entered findings based on it, an appellate court will not reverse that finding and reject the plea unless it finds a substantial conflict between the plea and the accused’s statements or other evidence of record.” Garcia, 44 M.J. at 498. “A ‘mere possibility’ of such a conflict is not a sufficient basis to overturn the trial results.” Id. (quoting Prater, 32 M.J. at 436).
As in United States v. Phillippe, 63 M.J. 307 (C.A.A.F.2006), of last term, we are again called upon to determine whether the military judge’s duty to inquire further has been triggered by disclosures made during, or subsequent to, the plea colloquy. In Phillippe, we held that “when, either during the plea inquiry or thereafter, and in the absence of prior disavowals ... circumstances raise a possible defense, a military judge has a duty to inquire further to resolve the apparent inconsistency.” Id. at 310-11 (citation omitted). The existence of an apparent and complete defense is necessarily inconsistent with a plea of guilty. This was the case in Phillippe, where early termination of the alleged period of unauthorized absence was raised, presenting an apparent ambiguity or inconsistency with the plea thereby warranting further inquiry. Id. at 311; see also United States v. Pinero, 60 M.J. 31, 35 (C.A.A.F.2004); United States v. Reeder, 22 C.M.A. 11, 12-13, 46 C.M.R. 11, 12-13 (1972). The question in this case is whether Appellant’s reference to his bipolar condition in the plea context “set[] up matter raising a possible defense,” as in Phillippe, or whether it presented only a “mere possibility” of a defense, as in Prater. Phillippe, 63 M.J. at 310-11; Prater, 32 M.J. at 436-37.
On the one hand, the injuries Appellant describes are as graphic as they are unfortunate. One is tempted, without more, to conclude that injuries of this magnitude must surely raise a possible mental responsibility defense. Moreover, in military law, given that lack of mental responsibility is an affirmative defense, mental health issues bear special status. This is reflected in R.C.M. 706 and Military Rule of Evidence (M.R.E.) 302.[2] This status in part reflects the recognition that combat and other operational conditions may generate or aggravate certain mental health conditions, such as post traumatic stress disorder. As a result, military judges should take particular care to make sure that considerations of mental health do not put the providence of the plea at issue.
On the other hand, in this case, Appellant’s assertion that his plea was improvident rests entirely on his unsworn statement, in which he states that he was diagnosed with bipolar disorder. Thus, unlike the circumstance we encountered in United States v. Harris, 61 M.J. 391, 392-94 (C.A.A.F.2005), there was no factual record developed during or after the trial substantiating Appellant’s statement or indicating whether and how bipolar disorder may have influenced his plea. Nor did Appellant’s conduct during the plea inquiry raise concerns that might have suggested to *463 the military judge that Appellant lacked the capacity to plead. If so, this might have prompted the military judge to inquire into Appellant’s mental responsibility at the time of the offenses. Moreover, Appellant has not asserted, nor does his statement reflect, that he was unable to appreciate the nature and quality or wrongfulness of his acts as a result of a mental disease or defect. Thus, unlike the situation in Phillippe, where the appellant’s statement raised the possibility of a complete defense of early termination to the charged term of absence, Appellant’s statement without more, did not raise an apparent inconsistency with his plea.
In such a circumstance, the military judge may reasonably rely on both a presumption that the accused is sane[3] and the long-standing principle that counsel is presumed to be competent. United States v. Cronic, 466 U.S. 648, 658, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984); United States v. Scott, 24 M.J. 186, 188 (C.M.A.1987). Moreover, the President has assigned the burden of proving lack of mental responsibility to the accused. R.C.M. 916(b). Thus, when the accused is presenting his sentencing statement through or with the assistance of counsel, the military judge may properly presume, in the absence of any indication to the contrary, that counsel has conducted a reasonable investigation into the existence of the defense. This is particularly so when the matter raised does not in and of itself present an apparent or possible defense.
Appellant points to our decisions in United States v. Martin, 56 M.J. 97 (C.A.A.F.2001), and Harris, 61 M.J. at 391, for the proposition that “[t]he military judge must have known that a bipolar disorder was a viable defense for Appellant.” However, these cases establish that bipolar disorder, like other disorders, may exist with enough severity to raise a substantial question regarding the issue of the accused’s mental responsibility. However, the disorder does not negate responsibility in all cases. Martin was a contested ease in which the defense was attempting to carry its burden of proving lack of mental responsibility due to the severity of the accused’s bipolar condition. 56 M.J. at 100-01. Two defense psychiatrists testified that Martin’s condition was severe enough that he was unable to appreciate the nature and quality or wrongfulness of his conduct. Id. Conversely, three government psychiatrists testified that Martin could appreciate the wrongfulness of his acts at the time of the offenses. Id. at 101. The question was whether Martin had carried his burden in proving the defense of lack of mental responsibility by clear and convincing evidence, and we concluded that a reasonable jury could have concluded that he did not. Id. at 110.
In Harris, a pretrial examination conducted pursuant to R.C.M. 706 concluded that the accused had not suffered from a severe mental defect or disease and that he had been mentally responsible at the time of the offenses. 61 M.J. at 393. He was subsequently convicted in accordance with his pleas. Id. at 392. After the court-martial, and while Harris was serving his sentence to confinement, another mental health expert concluded that Harris had suffered from bipolar disorder, that this was a severe mental disease at the time of the offenses, and that he could not appreciate the wrongfulness of his conduct. Id. at 393. The doctor’s concern was documented in the record, and highlighted by Harris’s behavior of polishing his cell with a sock. Id. Thus, in Harris, the military judge was confronted with two conflicting, confirmed, and documented medical conclusions. These conclusions were the subject of a post-trial session pursuant to Article 39(a), UCMJ,[4] after which, notwithstanding the conflicting conclusions, the military judge determined that the previous guilty plea had been entered providently. Id. After the post-trial Article 39(a), UCMJ, session, the convening authority ordered yet another examination pursuant to R.C.M. 706. Id. at 394. That psychiatrist concluded that Harris had suffered from a severe mental disease, i.e., bipolar disorder, at the time of the offenses but that he had been able to appreci *464 ate the nature and quality or wrongfulness of his conduct. Id. The issue in the case was whether the conflicting post-trial examinations and related medical evidence, which were themselves in conflict with the pretrial examination, supported a petition for a new trial under R.C.M. 1210(f)(2). Id. at 397. We held that they did and granted the petition for a new trial. Id. at 398-99.
Martin and Harris entailed substantially more than a passing reference to a diagnosis of bipolar disorder.[5] Nor, has Appellant to date offered any indication that his disorder raises a substantial question regarding his mental responsibility. As a result, we conclude that Appellant’s reference to his diagnosis of bipolar disorder, without more, at most raised only the “mere possibility” of a conflict with the plea. Whether a conflict has actually arisen or not, it may be prudent for a military judge to conduct further inquiry when a significant mental health condition is raised during the plea inquiry in light of military law and practice regarding mental health issues and to obviate such issues on appeal. Whether further inquiry is required as a matter of law is a contextual determination. In this case, we hold that the military judge did not abuse his discretion in not doing so.[6]
DECISION
The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.

. The convening authority suspended conflnement in excess of sixty days for twelve months.

. R.C.M. 706(a) imposes an obligation not only on defense counsel but also on any commander, investigating officer, trial counsel, military judge or member to notify the officer authorized to order a mental exam when "there is reason to believe that the accused lacked mental responsibility for any offense charged or lacks capacity to stand trial.” M.R.E. 302(a) provides a limited privilege to the accused who participates in an R.C.M. 706 examination even if a rights warning has been provided under Article 31(b), UCMJ, 10 U.S.C. § 831(b) (2000). These two examples distinguish mental responsibility from other affirmative defenses.

. "The accused is presumed to be mentally responsible at the time of the alleged offense.” R.C.M. 916(k)(3)(A).

. 10 U.S.C. § 839(a) (2000).

. Appellant states in his unsworn statement that after the assault, "that’s when I started to get in trouble.” However, the record reveals, and Appellant concedes, that he received nonjudicial punishment on October 10, 2001, for an unauthorized absence of twenty days. This was obviously before the assault of November 20, 2001, and was evidence the military judge had before him when Appellant made his unsworn statement.

. Appellant also claims the reference in his unsworn statement to bipolar disorder raised the issue of his mental capacity at the time bf trial. As stated earlier, the record is devoid of any indicator that would have given the military judge reason to believe that Appellant lacked capacity to stand trial. See R.C.M. 706(a).