# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**J.A. FISCHER, K.M. MCDONALD, T.J. STINSON**
**Appellate Military Judges**

**UNITED STATES OF AMERICA**

v.

**JOSE A. ROJAS, JR.**
**STAFF SERGEANT (E-6), U.S. MARINE CORPS**

**NMCCA 201400292**
**SPECIAL COURT-MARTIAL**

**Sentence Adjudged:** 15 April 2014.
**Military Judge:** LtCol L.J. Francis, USMC.
**Convening Authority:** Commanding General, Marine Air Ground Task Force Training Command, MCAGCC, Twentynine Palms, CA.
**Staff Judge Advocate's Recommendation:** LtCol R.J. Ashbacher, USMC.
**For Appellant:** LT David Warning, JAGC, USN.
**For Appellee:** LT Ann Dingle, JAGC, USN.


**14 May 2015**


---------------------------------------------------------
**OPINION OF THE COURT**
---------------------------------------------------------

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

STINSON, Judge:

A military judge sitting as a special court-martial convicted the appellant, pursuant to his pleas, of two specifications of violating a lawful general order, one specification of wrongful use of D-amphetamine and one specification of wrongful possession of testosterone enanthate-a steroid, in violation of Articles 92 and 112a of the Uniform

Code of Military Justice (UCMJ) 10 U.S.C. §§ 892 and 912a.  The
military judge sentenced the appellant to six months'
confinement, reduction in rate to E-1, and a bad-conduct
discharge.  Pursuant to a pretrial agreement, the convening
authority suspended all confinement in excess of time served
(130 days), but otherwise approved the sentence.

In his sole assignment of error, the appellant avers that a
bad-conduct discharge is inappropriately severe in light of his
sixteen years of creditable service and significant combat
experience.  Additionally, this court specified an issue
concerning whether the military judge abused his discretion by
failing to inquire whether a possible defense existed after
evidence was introduced during presentencing that the appellant
was diagnosed with post-traumatic stress disorder (PTSD).

After careful consideration of the record of trial, the
appellant's assignment of error, the court's specified issue,
and the pleadings of the parties, we conclude that the findings
and sentence are correct in law and fact and that no error
materially prejudicial to the substantial rights of the
appellant was committed.  Arts. 59(a) and 66(c), UCMJ.

## Background

In July 2013, the appellant tested positive for D-
amphetamine during a unit urinalysis.  Later, base police
recovered a vial of steroids and several items of drug
paraphernalia when responding to a call regarding a domestic
dispute at the appellant's on base residence.  The appellant
also drove on base while his driving privileges were revoked.

During the Government's case in presentencing, Master
Gunnery Sergeant IR was called as a witness and provided the
following testimony:

    TC:  Talk to me about post-traumatic stress disorder
         within the unit.
    Wit: Um.

    TC:  And let me clarify.  What environment is there in
         the unit for coping with, addressing the issue
         resulting of post-traumatic stress disorder?

    Wit: The climate for it is one of complete
         understanding, complete support.  Myself,
         individually, suffering from PTSD for a very long

2

time, I take it extremely serious. I take any and every opportunity to speak with the Marines at that command about PTSD, about my personal situation, of what I went through, what I continue to go through, what I did to deal with it, ensure that they know what services are available, make those services available. If I need to get involved, have involved TBI counselors, PTSD counselors in to provide specific command briefing, putting people in contact with those. Knowing a personal thing, because it's a very personal thing, but I made every opportunity to afford that to any of the Marines there.

TC: And by "there" you're refer to go your present –
Wit: Yes, sir, at MCTOG.

TC: If a staff NCO has PTSD, does that impact his ultimate responsibilities to his Marines?
Wit: No. Suffering from PTSD does not relieve you from your responsibilities as a Marine, as a leader. It means you have some additional challenges in your life, in your career that you need to address. And it can be dealt with. I'm a perfect example of that, if you will, because I've continued to be successful in the Marine Corps in spite of PTSD, and TBI's for that matter.

TC: In your 22-year career, have you dealt with other Marines of any rank that also have been impacted by PTSD/TBI?

DC: Objection, sir. I think we're pretty off the wall right now. Relevance.
MJ: Sustained. I'm assuming that at some point there'll be some information that the accused suffered from PTSD because otherwise none of this would make any sense. So are you trying to rebut an anticipated case by the defense?

TC: At the end of the SRB there is a PTSD screening form, your Honor.
MJ: Okay.

3

TC: Which indicates that the accused suffers from post-traumatic stress disorder. So in anticipation of rebutting that, your Honor.
MJ: Okay. And what is the purpose of asking this witness his experiences with other people who have suffered PTSD?

TC: As to how they respond to the injury, Your Honor, and whether they are involved in misconduct. You know, whether having PTSD automatically means you do misbehavior within the Marine Corps.
MJ: Okay. I'm going to sustain the objection.[1]

The PTSD screening form referenced during the above colloquy was introduced by the Government as part of the appellant's service record and is dated 19 February 2014, approximately two months prior to the guilty plea date. The form indicates that the appellant screened positive for PTSD and negative for Traumatic Brain Injury (TBI). Further, in the document, the screening physician states: "Based upon his history of PTSD this may have been a contributing factor behind his misconduct."[2]

The military judge did not re-open the providence inquiry or specifically question the appellant or the trial defense counsel regarding potential defenses associated with the appellant's PTSD. In reviewing the record of trial, we note that the stipulation of fact[3] repeatedly, although generically, states that the appellant had no legal excuse or justification for his conduct related to each offense to which he pled guilty. Further, during his unsworn statement, after relaying traumatic combat events from Afghanistan and Iraq, the appellant asserted that he did not believe that he had any legal justification to use methamphetamine and that he had other options to address PTSD, such as help through the chain of command, Military One Source, and mental health service providers, rather than resorting to drug use.[4] Finally, the trial defense counsel, in his closing argument, addressed the impact of PTSD on his client in arguing for a lighter sentence, but disavowed any reliance on any related defense, specifically stating, "[a]nd are those

_____

[1] Record at 221-22.

[2] Prosecution Exhibit 2 at 67.

[3] PE 1.

[4] Record at 253.

4

experiences a justification or an excuse for his conduct, for using drugs?  They're not.  And he stood up here and he claimed responsibility and he took ownership of those mistakes."[5]

## Analysis

### Inquiry into Possible Defense Based on Diagnosis of PTSD

We review a military judge's decision to accept a guilty plea for an abuse of discretion.  *United States v. Inabinette,* 66 M.J. 320, 322 (C.A.A.F. 2006).  Once the military judge has accepted the pleas, an appellate court should not disturb those findings unless there is a substantial conflict between the pleas and later statements by the accused or other evidence of record.  *United States v. Shaw,* 64 M.J. 460, 462 (C.A.A.F. 2007).  When, either during the plea inquiry or thereafter, a possible defense is raised, the "military judge has a duty to inquire further to resolve the apparent inconsistency."  *United States v. Phillipe*, 63 M.J. 307, 310-11 (C.A.A.F. 2006).  However, there must be a "substantial basis" in law or fact for questioning the guilty plea and the "mere possibility" of a defense does not require the military judge to re-open providency or inquire further.  *Inabinette,* 66 M.J. at 322.  The line between a "possible defense" and the "mere possibility of a defense" is not easily discernible and has been called somewhat amorphous.  *United States v. Hayes*, 70 M.J. 454, 458 (C.A.A.F. 2012).  Further, not every mitigating statement requires additional inquiry by the military judge.  *Id.*

An affirmative defense by definition constitutes matters inconsistent with the plea under Article 45 of the Uniform Code of Military Justice.  *Id.*  RULE FOR COURTS-MARTIAL 910(h)(2), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.) provides that, "If after findings but before the sentence is announced the accused makes a statement to the court-martial, in testimony or otherwise, or presents evidence which is inconsistent with a plea of guilty on which a finding is based, the military judge shall inquire into the providence of the plea."[6]  The information introduced after findings does not need to raise a complete defense, it is sufficient to trigger a duty to inquire further if it raises a

---

[5] *Id.* at 269.

[6] Although the evidence in this case regarding PTSD was first introduced by the Government, we do not find that distinction relevant for purposes of our review as the ultimate question is whether the military judge had an independent obligation to conduct additional inquiry based on the inconsistent information.

possible defense.  *Phillipe*, 63 M.J. at 310.  The duty to inquire reflects concern that "'there may be subtle pressures inherent to the military environment that may influence the manner in which service members exercise (and waive) their rights.'"  *Phillipe*, 63 M.J. at 310 (quoting *United States v. Pinero*, 60 M.J. 31, 33 (C.A.A.F. 2004)).  Whether further inquiry is required as a matter of law is a contextual decision.  *Shaw*, 64 M.J. at 464.  In addition, we are mindful of issues related to mental health conditions in light of the significant number of service members who have served multiple combat tours in high stress environments.

A military judge may reasonably rely on both a presumption that the accused is sane and the long standing principle that counsel is presumed to be competent.  In addition, absent evidence to the contrary, the military judge may presume that counsel has conducted a reasonable inquiry into the existence of defenses, including defenses related to the mental health of the appellant.  *Shaw*, 64 M.J. at 463.  Here, the defense counsel engaged in specific dialogue with the appellant regarding the potential for a legal justification or excuse for the conduct at issue.  The appellant asserted that he had no justification or excuse and the defense counsel argued in mitigation that the appellant's acceptance of responsibility should be considered in determining an appropriate sentence.  Additionally, the record does not reveal any indication that the appellant was unable to appreciate the nature and quality or the wrongfulness of his acts.  *Id*.  Indeed, during the providence inquiry the appellant stated that he knew that what he was doing was wrong.[7]

As the court noted in *Shaw*, it may be prudent for a military judge to conduct further inquiry when a significant mental health condition like PTSD is raised.  However, where the defense counsel is aware of the diagnosis and asks his client on the record about the possibility of a legal excuse or justification and makes affirmative representations regarding the lack of a defense, we find that the military judge did not abuse his discretion by failing to re-open the providence inquiry to conduct additional inquiry into the appellant's PTSD diagnosis.

---

[7] Record at 194.  "Wrongful, sir, because since I joined in 1998, use of illicit drugs is not tolerated and illegal, sir.  I have been a verifier form many urinalysis tests, so I knew full well on my own cognizance that it was illegal, sir."

**Sentence Appropriateness**

This court reviews sentence appropriateness *de novo. United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006). Sentence appropriateness involves the judicial function of assuring that justice is done and that the accused gets the punishment he deserves. *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988). As part of that review, we give "'individualized consideration' of the particular accused 'on the basis of the nature and seriousness of the offense and the character of the offender.'" *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (quoting *United States v. Mamaluy*, 27 C.M.R. 176, 180-81 (C.M.A. 1959)).

Here, the appellant was convicted of specifications related to violating lawful general orders and drug offenses. While the appellant's creditable and honorable service weighs into our individual consideration of the appropriateness of the sentence, we conclude that, based on the entire record, justice was served and the appellant received the punishment he deserved.

**Conclusion**

The findings and sentence as approved by the convening authority are affirmed.

Senior Judge FISCHER and Judge MCDONALD concur.

For the Court

R.H. TROIDL
Clerk of Court

7