# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

———————————————

## No. 201600150

———————————————

## UNITED STATES OF AMERICA
Appellee

v.

## WILLIAM E. TREMPE, JR.
Lance Corporal (E-3), U.S. Marine Corps
Appellant

———————————————

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Commander Marcus N. Fulton, JAGC, USN.
Convening Authority: Commander, U.S. Marine Corps Forces
Command, Norfolk, VA.
Staff Judge Advocate's Recommendation: Major Christopher G.
Blosser, USMC.
For Appellant: Peter Kageleiry, Jr., Esq.; LT Doug Ottenwess,
JAGC, USN.
For Appellee: Commander James E. Carsten, JAGC, USN;
Lieutenant Jetti L. Gibson, JAGC, USN.

———————————————

Decided 31 January 2017

———————————————

Before MARKS, RUGH, and GLASER-ALLEN, *Appellate Military Judges*

———————————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Practice and Procedure 18.2.**

———————————————

RUGH, Judge**:**

A military judge sitting as a general court-martial convicted the appellant, consistent with his pleas, of sexual abuse of a child and indecent language—violations of Articles 120b and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920b and 934 (2012). The military judge

sentenced the appellant to 18 months' confinement, reduction to pay grade E-1, and a dishonorable discharge. Pursuant to a pretrial agreement, the convening authority (CA) disapproved the dishonorable discharge, changing it to a bad-conduct discharge, suspended all confinement in excess of 300 days for the period of the confinement served plus 12 months thereafter, and approved the remaining sentence as adjudged.

The appellant now raises as error that the military judge abused his discretion in accepting the appellant's plea to indecent language. We disagree, and, finding no error materially prejudicial to the appellant's substantial rights, we affirm the findings and sentence. Arts. 59(a) and 66(c), UCMJ.

## I. BACKGROUND

From February to August 2014, the appellant engaged in numerous, lewd online interactions with his 15-year-old cousin. During these interactions, the appellant made several sexually explicit remarks to the girl, sent her multiple pictures of his nude body including images of him holding his erect penis, and requested that she send nude pictures of herself to him.

During approximately the same period from September 2013 to August 2014, the appellant advanced a relationship with his 17-year-old step-niece from online communications to actual sexual conduct. During this relationship, he communicated various statements to her verbally or via text message including: "are you a virgin and are you ready to lose your virginity;" "have you ever seen a penis before and do you want to see one;" "I have never taken a girl's virginity;" and "send me nude photographs."[1] The appellant also sent his niece pictures of his nude body including his penis. The appellant made these statements to his niece because he believed she was a virgin, and he wished "to coax her into having sexual intercourse for the first time with him."[2] He asked his niece not to tell anyone about their communications because "it would tear their family apart, they would both get in trouble, and her family would think she is a whore."[3]

After the military judge advised the appellant of the elements of the indecent language offense and the effects of his guilty plea, the appellant voluntarily admitted to making the statements to his niece. The military judge then inquired at length into the indecent nature of the communications:

---

[1] Stipulation of Fact, Prosecution Exhibit 1 at 3.

[2] *Id*. at 4.

[3] *Id*.

MJ [military judge]: Tell me again why the language set forth in this specification is, in your own mind, indecent?

ACC [the appellant]: Because the victim in this case is my niece through marriage, and if family or anybody else were to find out about this relationship, it would be shocking to the moral senses and grossly offensive in most cases.

MJ: In the context of that relationship, do you think that the language was grossly offensive to modesty, decency, or propriety?

ACC: Yes, Your Honor.

MJ: And why is that?

ACC: Because she is a family member and the context of what was discussed between the two of us.

MJ: You have a familial relationship between the two of you. Did you view one another as family?

ACC: Somewhat, Your Honor, yes.

MJ: Do you think that the language shocked the moral sense because it was vulgar, filthy, or disgusting in nature?

ACC: Yes, Your Honor.

MJ: Do you think that it shocked the moral sense because of its tendency to incite lustful thoughts?

ACC: Yes, Your Honor.

MJ: Do you think that that language – all that language alleged tends to corrupt the morals or incite libidinous thoughts?

ACC: Yes, Your Honor.

MJ: Do you think that it violates community standards?

ACC: Yes, Your Honor.

MJ: Can you tell me why?

ACC: Because the community would find this type of conversation between family members vulgar and disgusting.

. . . .

MJ: Tell me why the [request for nude photographs of the appellant's niece], in your mind, was indecent.

3

ACC:  It was the fact of her being under the age of 18 and sending pornographic images of herself to me.

MJ:  What makes you think that those images would be pornographic that you received?

ACC:  Revealing – revealing her genitalia.

MJ:  Is anything about the context of the back and forth between the two of you, that you think indicates or gives context to that statement that would indicate that you were requesting pornographic pictures?

ACC:  Yes, Your Honor.

MJ: When you agree that they were pornographic, what does that mean to you?

ACC:  Asking for anything – I would ask for revealing or sexual in nature photographs.[4]

The appellant also explained why, in his opinion, these utterances were both prejudicial to good order and discipline and service discrediting. The military judge then found the appellant guilty of the charge.

The appellant now asserts that his plea to the indecent language offense was improvident for three reasons: his plea was inconsistent with other facts elicited during the court-martial; the language alleged was not indecent because it did not violate community standards; and the military judge did not advise the appellant of the law governing constitutionally protected liberty interests.

## II. DISCUSSION

A military judge may not accept a guilty plea "if it appears that [the appellant] has entered the plea of guilty improvidently or through lack of understanding of its meaning and effect." Article 45(a), UCMJ. To prevent the acceptance of improvident pleas, the military judge is required to make "such inquiry of the accused as shall satisfy the military judge that there is a factual basis for the plea." RULE FOR COURTS-MARTIAL 910(e), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.); *United States v. Ferguson,* 68 M.J. 431, 433 (C.A.A.F. 2010). We review a military judge's acceptance of a guilty plea for an abuse of discretion, reversing only if the "record shows a substantial basis in law or fact for questioning the plea." *United States v. Moon,* 73 M.J. 382, 386 (C.A.A.F. 2014) (citation omitted). We afford significant deference to the military judge's determination that a factual

---

[4] Record at 33-35.

basis exists to support the plea. *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008).

"If an accused sets up matter inconsistent with the plea at any time during the proceeding, the military judge must either resolve the apparent inconsistency or reject the plea." *United States v. Shaw*, 64 M.J. 460, 462 (C.A.A.F. 2007) (citations and internal quotation marks omitted). Once a plea has been accepted and findings have been entered, "'an appellate court will not reverse that finding and reject the plea unless it finds a substantial conflict between the plea and the [appellant's] statements or other evidence of record.'" *Id. (*quoting *United States v. Garcia*, 44 M.J. 496, 498 (C.A.A.F 1996)).

Here, the appellant asserts that his statements—made on the record and provided to investigators as contained in Prosecution Exhibit 4—conflict with his plea inasmuch as his eventual, romantic relationship with his niece was inconsistent with his claim of previously uttering indecent language to the same girl. We disagree that his plea conflicts with the rest of the record. While the status of their relationship is relevant in determining "'the precise circumstances under which the charged language was communicated,'" *United States v. Green*, 68 M.J. 266, 270 (C.A.A.F. 2010) (quoting *United States v. Brinson*, 49 M.J. 360, 364 (C.A.A.F. 1998)), those facts alone do not paint a complete picture.

On the record, the appellant clearly identified those aspects of his interactions that contributed to making the statements indecent: that the person to whom he made the statements was his niece (his sister's step-daughter); that she was under 18-years-of-age; that she was less sophisticated than him in the ways of adult relationships; and that he focused on her specifically because she was a virgin. His eventual success in coaxing his niece into a sexual relationship does not make his earlier statements to her any less troubling. As a result, we find no substantial conflict between the appellant's plea and the rest of the record.

Similarly, we do not find a substantial basis to question the appellant's plea based on whether the alleged language violated community standards. During his inquiry, the military judge defined "indecent language" as:

> [T]hat which is grossly offensive to the community's sense of modesty, decency, or propriety or shocks the moral sense of the community because of its vulgar, filthy or disgusting nature or its tendency to incite lustful thought. Language is indecent if it reasonably tends to corrupt morals or incite libidinous thoughts, that is, a lustful, lewd, or salacious connotation, either expressly or by implication from the circumstances under which it was spoken. The test is whether the particular

language employed is calculated to corrupt morals or incite libidinous thoughts and not whether the words themselves are impure. "Community" as used in [MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), Part IV, ¶ 89] means the standards that are applicable to the military as a whole and not your unit.[5]

The appellant pleaded guilty to the specification as explained by the military judge. A guilty plea inquiry is less likely to have developed the facts as fully as a contested trial, and a decision to plead guilty may include a "conscious choice by an accused to limit the nature of the information that would otherwise be disclosed in an adversarial contest." *United States v. Jordan*, 57 M.J. 236, 238-39 (C.A.A.F. 2002). Even so, the appellant's responses to the military judge provide sufficient facts to find the plea provident. The military judge advised the appellant of the elements and defined those elements for the appellant. He asked the appellant why he believed he was guilty of the specifications. He also asked him if and why his actions violated community standards. In response, the appellant admitted, "[b]ecause the community would find this type of conversation between family members vulgar and disgusting."[6] He also affirmed that his request for a nude picture of his niece was indecent because "[i]t was the fact of her being under the age of 18 and sending pornographic images of herself to me."[7] 'The necessary attribute[s] of indecency . . . [are] adequately alleged if the language employed by the accused[,] when reasonably construed by community standards, serves to convey a libidinous message whether or not the words themselves are impure.'" *United States v. Diggs*, No. 200800633, 2009 CCA LEXIS 100, at *3, unpublished op. (N-M. Ct. Crim. App. 2009) (quoting *United States v. Linyear*, 3 M.J. 1027, 1030 (N.C.M.R. 1977)). Here, we find the military judge did not abuse his discretion when he accepted the appellant's admission to uttering indecent language that reasonably violated community standards.

---

[5] *Id*. at 17.

[6] *Id*. at 34.

[7] *Id. See United States v. French*, 31 M.J. 57, 60 (C.M.A. 1990) ("When an adult male asks his minor female stepdaughter if he can climb into bed with her, community standards are such that it is not unreasonable to accuse him of asking for something more than a restful sleep."). *Cf. United States v. Hullett*, 40 M.J. 189, 191 (C.M.A. 1994) ("An act of . . . intercourse between consenting adults is not intrinsically indecent.").

Last, the appellant asserts that the military judge should have advised him of the types of conduct that might fall within constitutionally protected interests, including a discussion of First Amendment protected speech.

The providence of a plea is based on the appellant's recitation of the factual history of the crime, and his understanding of how the law relates to those facts. *United States v. Medina*, 66 M.J. 21, 26 (C.A.A.F. 2008). "When a charge against a servicemember may implicate both criminal and constitutionally protected conduct, the distinction between what is permitted and what is prohibited constitutes a matter of 'critical significance.'" *Moon*, 73 M.J. at 388(citing *United States v. Hartman*, 69 M.J. 467, 468 (C.A.A.F. 2011)). As a result, when an Article 134, UCMJ, charge implicates constitutionally protected conduct, the heightened plea inquiry requirements, as laid out in *Hartman,* will apply. "[T]he colloquy must contain an appropriate discussion and acknowledgment on the part of the accused of the critical distinction between permissible and prohibited behavior." *Id.* (quoting *Hartman*, 69 M.J. at 468) (alteration in original).

Here, however, the appellant does not assert that the language to which he pleaded guilty was constitutionally protected. Rather, he avers that the military judge should have informed him, at the time of his pleas, of the distinction between protected and unprotected speech. We agree with the proposition that the appellant's utterances in these circumstances were not protected. Indecent language is not within the right of speech guaranteed by the First Amendment, *United States v. Moore*, 38 M.J. 490, 492 (C.A.A.F. 1994), and the appellant's responses to the military judge provided sufficient facts to find the statements made to his 17-year-old niece indecent. As a result, the heightened inquiry requirements of *Hartman* did not apply, and the military judge did not abuse his discretion by not discussing the constitutional protections afforded other forms of speech.[8]

However, military judges should take note: conduct that is constitutionally protected in civilian society may still be prejudicial to good order and discipline or likely to bring discredit upon the armed forces and, thus, be subject to criminal sanction. *United States v. Barberi*, 71 M.J. 127, 131 (C.A.A.F. 2012), (overruled on other grounds by *United States v.*

---

[8] The appellant also asserts that the military judge should have defined the term "pornography" after the appellant initially stated that he requested "pornographic images" from his niece. However, in the context of the record, it is clear the appellant used this term to further explain what he hoped to accomplish by stating "send me nude photographs." "Pornographic" was not used in its strictly legal sense but from the appellant's lay perspective to describe nude body and genital pictures produced by his 17-year-old niece upon his request. As such, a formal definition by the military judge was both unnecessary and potentially misleading.

*Piolunek*, 74 M.J. 107, 108 (C.A.A.F. 2015)); *Parker v. Levy*, 417 U.S. 733, 758 (1974) ("The fundamental necessity for obedience, and the consequent necessity for imposition of discipline, may render permissible within the military that which would be constitutionally impermissible outside it."). Under circumstances in which otherwise protected language is made criminal *solely* by means of the terminal element, the military judge should conduct the heightened inquiry directed by *Hartman* and establish a "'reasonably direct and palpable' connection between an appellant's statements and the military mission." *United States v. Wilcox*, 66 M.J. 442, 448 (C.A.A.F. 2008) (citations omitted).

**B. Incorrect court-martial order**

Although not raised by the appellant, we note that the court-martial order (CMO) fails to reflect that the appellant was found not guilty of the language "at or near Tampa, Florida" in the sole specification under Charge I.[9] The appellant does not assert, and we do not find, any prejudice resulting from this error. Nevertheless, the appellant is entitled to have the CMO accurately reflect the results of the proceedings. *Id.* (citing *United States v. Crumpley*, 49 M.J. 538, 539 (N-M. Ct. Crim. App. 1998). We thus order corrective action in our decretal paragraph.

### III. CONCLUSION

The findings and sentence, as approved by the CA, are affirmed. The supplemental CMO shall correctly reflect that the appellant was found not guilty of the phrase "at or near Tampa, Florida" in the specification of Charge I.

Senior Judge MARKS and Judge GLASER-ALLEN concur.

For the Court



R.H. TROIDL
Clerk of Court

---

[9] Record at 59.