*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
STEPHENS, LAWRENCE, and ATTANASIO
Appellate Military Judges

_____

**UNITED STATES**
Appellee

**v.**

**Dillon D. SHORT**
Lance Corporal (E-3), U.S. Marine Corps
Appellant

**No. 201900140**

Decided: 22 September 2020

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Terrance J. Reese

Sentence adjudged 12 February 2019 by a special court-martial convened at Marine Corps Base Camp Lejeune, North Carolina, consisting of a military judge sitting alone. Sentence approved by the convening authority: reduction to E-1, confinement for 60 days, and a bad-conduct discharge.

For Appellant:
*Captain Scott F. Hallauer, JAGC, USN*

For Appellee:
*Major Clayton L. Wiggins, USMC*
*Lieutenant Kimberly Rios, JAGC, USN*

Judge ATTANASIO delivered the opinion of the Court, in which Senior Judge STEPHENS and Judge LAWRENCE joined.

_____

## PUBLISHED OPINION OF THE COURT

_____

ATTANASIO, Judge:

Appellant was convicted, in accordance with his pleas, of two specifications of resisting apprehension and one specification of assault consummated by a battery in violation of Articles 95[1] and 128, Uniform Code of Military Justice [UCMJ].[2]

Appellant initially submitted his case to the Court on its merits, without specific assignment of error. Upon review of the record of trial, we specified three issues for briefing by appellate counsel:

> *(1) Was Appellant already in "custody" when the civilian provost marshal officer attempted to "apprehend" him;*
>
> *(2) If Appellant was already in "custody," is it legally possible for him to "resist apprehension" within the meaning of Article 95, UCMJ;* and,
>
> *(3) If Appellant was already in "custody," is there a substantial basis in law or fact to question Appellant's guilty plea to resisting apprehension from the civilian provost marshal officer?*

After carefully considering the record and the parties' briefs, we hold that it is legally impossible to resist apprehension within the meaning of Article 95, UCMJ, where the accused was already in custody at the time of the alleged resistance. Custody constitutes a defense to the crime of resisting apprehension. As such, should the record reasonably raise the possibility that the accused was in custody at the time of alleged resistance, the military

_____

[1] As part of the Military Justice Act of 2016, National Defense Authorization Act for Fiscal Year 2017, Division E, Pub. L. No. 114-328, effective 1 January 2019, Congress relocated the offense of resisting apprehension to Article 87a, UCMJ. The statutory language, elements, and other pertinent *Manual for Courts-Martial* [*MCM*] provisions remain identical to those under which Appellant was charged.

[2] 10 U.S.C. §§ 928, 895 (2012).

judge must make further inquiry and either resolve the matter or reject the accused's guilty plea.

Here, we find that the record reasonably raised this defense and that the military judge failed to make adequate further inquiry to resolve it. Accordingly, we find a substantial basis in law and fact to question Appellant's guilty plea to Specification 2 of the Additional Charge. We set aside the guilty finding, dismiss Specification 2 of the Additional Charge, reassess the sentence, and affirm the remaining findings of guilt and the sentence as reassessed.

## I. BACKGROUND

During the evening of 16 August 2018, in his barracks at Marine Corps Base Camp Lejeune, Appellant committed an assault consummated by a battery upon a Navy petty officer (Specification of the Charge). The victim sought assistance from the Battalion Officer of the Day, Marine First Lieutenant [1stLt] Alpha.[3] 1stLt Alpha arrived at the barracks and decided it was necessary to apprehend Appellant. Appellant resisted this apprehension by pushing 1stLt Alpha (Specification 1 of the Additional Charge). Officer Mike,[4] a civilian provost marshal officer [PMO], subsequently arrived on scene and attempted to handcuff Appellant. Appellant resisted Officer Mike's efforts (Specification 2 of the Additional Charge).

### A. The Plea Inquiry

After discussing the battery offense, Appellant described his resistance to 1stLt Alpha's efforts to apprehend him as follows: "I had shoved him away in the first attempt to get away from him. With doing so, I was forced to the ground and held down."[5]

Turning to the specification at issue—resisting apprehension by Officer Mike—Appellant described that 1stLt Alpha was "holding [him] down" while waiting for Officer Mike to arrive.[6] Appellant said his struggle with Officer Mike began when 1stLt Alpha "wanted to transfer me over to [Officer Mike],

---

[3] "1stLt Alpha" is a pseudonym. 1stLt Alpha was also assigned as Appellant's executive officer.

[4] "Officer Mike" is a pseudonym.

[5] R. at 30.

[6] *Id.* at 33.

but I began resisting [Officer Mike] in the transfer of me to them."[7] Appellant added, "I started resisting again" when 1stLt Alpha "turned me over to [Officer Mike]."[8]

The following colloquy then ensued:[9]

> MJ: So after he turned you over to [Officer Mike], [Officer Mike] was, at that point, trying to, I guess, either cuff you—what was he trying to do?
>
> ACC: I believe handcuff me, sir.
>
> MJ: At that point, you start to resist from him; is that correct?
>
> ACC: Yes, sir.
>
> MJ: So was there a little break in time in between that time frame? Were they ever, I guess—at that point, that first issue that we discussed, that was happening with just you and [1stLt Alpha]?
>
> ACC: Yes, sir. It was.
>
> MJ: So this one was after he was trying to turn you over to [Officer Mike] when he came to apprehend you further, then you resisted him a second time, I guess; is that correct?
>
> ACC: Yes, sir.

The military judge never addressed with Appellant or his counsel that a defense to resisting apprehension might exist if Appellant was already in custody at the time of his alleged resistance against Officer Mike.

## B. Other Evidence of Record

According to 1stLt Alpha's written statement: "[Appellant] became agitated and began to push [another Marine] which is when I made the decision and action to detain him until PMO arrived."[10]

---

[7] *Id.*

[8] *Id.*

[9] *Id.* at 34.

[10] Prosecution Exhibit [Pros. Ex.] 3 at 9.

The battery victim's statement described 1stLt Alpha's effort to appre-hend Appellant as follows: "Myself, [1stLt Alpha], and [another Marine] jump on [Appellant] to stop him from hurting anyone else and to subdue him. PMO is called so we held him and waited for them to show up."[11] In a follow-up email, the victim wrote, "[1stLt Alpha] grabs [Appellant] by the ankle and pulls him to the floor. We are [sic] jump on top of him to gain control of the situation."[12]

## C. Defense's Motion to Merge for Sentencing the Two Resisting Apprehension Specifications

At trial, Appellant's civilian defense counsel moved the court, pursuant to *United States v. Quiroz*,[13] to merge for sentencing the two resisting appre-hension specifications, arguing they arose from a single course of conduct.

The trial counsel disagreed, asserting that the two specifications did not constitute the same course of conduct.[14] The trial counsel argued that "[t]here was a difference in time that wasn't part of the same melee with [1stLt Alpha]" and that there was "some intervening time" during which the resistance against 1stLt Alpha "had terminated prior to it then starting up in a different form with [Officer Mike]."[15]

The military judge found that there was "at least some break in time" between the two events "from the first . . . apprehension to the transfer" and, "that these would be distinctly separate acts."[16] Applying the *Quiroz* factors, the military judge denied the Defense motion.

---

[11] *Id*. at 7.

[12] Pros. Ex. 5 at 1.

[13] 55 M.J. 334 (C.A.A.F. 2001).

[14] R. at 52.

[15] *Id*. at 53.

[16] *Id*. at 54.

## II. DISCUSSION

### A. Standard of Review

Before accepting a guilty plea, a military judge must ensure the plea is supported by a factual basis.[17] The military judge must elicit sufficient facts to satisfy every element of the offense in question.

On appeal, we review a military judge's decision to accept a plea of guilty for an abuse of discretion[18] and we review questions of law arising from the guilty plea de novo.[19] We may reject a guilty plea only if there is a substantial basis in law or fact, based on the entire record of trial, to question the plea.[20]

In *United States v. Inabinette,* our superior court wrote:

> There exist strong arguments in favor of giving broad discretion to military judges in accepting pleas . . . . As a result, in reviewing a military judge's acceptance of a plea for an abuse of discretion appellate courts apply a substantial basis test: Does the record as a whole show "'a substantial basis' in law and fact for questioning the guilty plea."

> Traditionally, this test is presented in the conjunctive (i.e., law *and* fact) . . . ; however, the test is better considered in the disjunctive (i.e., law *or* fact). That is because it is possible to have a factually supportable plea yet still have a substantial basis in law for questioning it. This might occur where an accused knowingly admits facts that meet all the elements of an offense, but nonetheless . . . states matters inconsistent with the plea that are not resolved by the military judge. At the same time, where the factual predicate for a plea falls short, a reviewing court would have no reason to inquire de novo into any legal questions surrounding the plea.[21]

---

[17] UCMJ art. 45(a); *see also United States v. Care*, 40 C.M.R. 247 (C.M.A. 1969); Rule for Courts-Martial [R.C.M.] 910(e).

[18] *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008) (quoting *United States v. Eberle*, 44 M.J. 374, 375 (C.A.A.F. 1996)).

[19] *Id.* (citing *United States v. Pena*, 64 M.J. 259 (C.A.A.F. 2007)).

[20] *Id.* (citing *United States v. Prater,* 32 M.J. 433 (C.M.A. 1991)).

[21] *Id.* (emphasis in original) (quoting *Prater*, 32 M.J. at 436)

The inquiry is sufficient "if 'the factual circumstances as revealed by the accused himself objectively support that plea.'"[22] We evaluate this question "in terms of the providence of his plea, not sufficiency of the evidence."[23]

When a military judge makes a ruling—including the decision to accept a guilty plea—based on an erroneous view of the law, he abuses his discretion.[24]

A potential defense to the charged crime constitutes "matter inconsistent with the plea" under Article 45(a), UCMJ. If, at any time during the proceeding, the accused advances a matter raising a possible defense, then "the military judge is obligated to make further inquiry to resolve any apparent ambiguity or inconsistency."[25] A failure to do so constitutes a substantial basis in law and fact for questioning the guilty plea.[26] However, "[t]he military judge is not required 'to embark on a mindless fishing expedition to ferret out or negate all possible defenses or potential inconsistencies.'"[27]

Once the military judge has accepted the pleas and entered findings based upon them, an appellate court will not reverse those findings and reject the plea unless it finds a substantial conflict between the pleas and the accused's statements or other evidence of record.[28] More than a "mere possibility" of such a conflict is required to overturn the trial results.[29]

---

[22] *United States v. Markert*, 65 M.J. 677, 680-81 (N-M Ct. Crim. App. 2007) (quoting *United States v. Faircloth*, 45 M.J. 172, 174 (C.A.A.F. 1996)).

[23] *Id.* at 681.

[24] *United States v. Simpson*, 77 M.J. 279, 282 (C.A.A.F. 2018) (citing *United States v. Passut*, 73 M.J. 27 (C.A.A.F. 2014)).

[25] *United States v. Phillippe*, 63 M.J. 307, 310 (C.A.A.F. 2006) (citing *Prater*, 32 M.J. at 436)); *see also United States v. Hayes*, 70 M.J. 454, 458 (C.A.A.F. 2012) (reaffirming the "possible defense" standard as the threshold that triggers the military judge's obligation to inquire further).

[26] *See Phillippe*, 63 M.J. at 311.

[27] *United States v. Miranda*, No. NMCCA 201100084, 2011 CCA LEXIS 502 at *8 (N-M Ct. Crim. App. Sep. 6, 2011) (unpub. op.) (quoting *United States v. Jackson*, 23 M.J. 650, 652 (N.M.C.M.R. 1986)).

[28] *United States v. Shaw*, 64 M.J. 460, 462 (C.A.A.F. 2007).

[29] *Id.*

**B. Analysis**

The Defense asserts that there is a substantial basis in law and fact to question the providence of Appellant's plea to resisting apprehension from Officer Mike because, the Defense contends, Appellant was then already in custody, and it is legally impossible to resist apprehension while in custody. The Government counters that Appellant was not in custody at the time of Officer Mike's apprehension effort and, therefore, we should affirm the guilty finding.

We find a substantial basis in law and fact to question the providence of Appellant's guilty plea to resisting apprehension by Officer Mike. The record reasonably raised a potential defense—that Appellant was already in 1stLt Alpha's custody at the time of Appellant's alleged resistance against Officer Mike. Accordingly, the military judge was required to inquire further into this matter and his failure to do so constituted an abuse of discretion. As a result, and on the basis of the entire record, we find the military judge erred by accepting Appellant's guilty plea.

*1. The law of resisting apprehension*

There are three elements required to establish the offense of resisting apprehension: (1) that a certain person attempted to apprehend the accused; (2) that said person was authorized to apprehend the accused; and, (3) that the accused actively resisted the apprehension.[30]

Apprehension is defined as "the taking of a person into custody."[31] Custody means "restraint of free locomotion imposed by lawful apprehension."[32] Restraint "may be physical or, once there has been a submission to apprehension or a forcible taking into custody, it may consist of control . . . by official acts or orders."[33] Custody "is temporary restraint intended to continue until other restraint . . . is imposed or the person is released."[34]

---

[30] *MCM*, pt. IV, ¶19.b.(1).

[31] Article 7(a), UCMJ; R.C.M. 302(a)(1); *MCM*, pt. IV, ¶19.c.(1)(a).

[32] *MCM*, pt. IV, ¶19.c.(4)(a).

[33] *Id.*

[34] *Id.*

To constitute the offense of resisting apprehension, "the resistance must be active, such as assaulting the person attempting to apprehend."[35] "Mere words of opposition, argument, or abuse, and *attempts to escape from custody after the apprehension is complete*, do not constitute the offense of resisting apprehension although they may constitute other offenses."[36]

It is a defense to resisting apprehension that the accused was already in custody at the time of the alleged resistance. "Military courts have long held that a person may not be convicted of resisting apprehension in situations where that person had already been placed in custody incident to a lawful apprehension."[37]

### 2. The law as applied to this case

Here, the record clearly raised the potential defense that Appellant was already in 1stLt Alpha's custody at the time of his alleged resistance to apprehension by Officer Mike. The military judge failed to make further inquiry to resolve this apparent ambiguity or inconsistency with Appellant's plea. In so doing, the military judge missed at least six warning buoys that signaled further inquiry was required. We discuss each in turn.

*First*, the record revealed that Appellant's free locomotion had already been restrained by lawful apprehension prior to Officer Mike's arrival. 1stLt Alpha used past tense to describe apprehending Appellant as a completed action, "*I made the decision and action to detain him* until PMO arrived."[38] Both Appellant and his victim confirmed that 1stLt Alpha took Appellant to the ground and held him there pending Officer Mike's arrival. Appellant described, "[First Lieutenant Alpha] was holding me down while he was waiting on [Officer Mike] to come and get me."[39] The victim confirmed that 1stLt Alpha (with others' help) subdued Appellant by jumping on top of him and holding him on the ground until PMO arrived.[40] Just as in *United States*

---

[35] *MCM*, pt. IV, ¶19.c.(1)(c); *see also United States v. Ledbetter*, No. NMCCA 200500009, 2007 CCA LEXIS 314, at *5-6 (N-M Ct. Crim. App. Aug. 14, 2007) (unpub. op.) (quoting identical language from *MCM*, pt. IV, ¶19.c.(1)(c) (2002 ed.)).

[36] *MCM*, Pt. IV, ¶19.c.(1)(c) (emphasis added).

[37] *United States v. Balogun*, 69 M.J. 666, 668 (A. Ct. Crim. App. 2010) (citations omitted), rev. *denied*, 69 M.J. 478 (C.A.A.F. 2011).

[38] Pros. Ex. 3 at 9 (emphasis added).

[39] R. at 33.

[40] Pros. Ex. 3 at 7; Pros. Ex. 5 at 1.

*v. Ledbetter*, Appellant's free locomotion was restrained once "he was forced to the ground by security personnel."[41]

*Second,* Appellant explained that he only began resisting Officer Mike during 1stLt Alpha's custody transfer to Officer Mike. Specifically, Appellant said, "I began resisting [Officer Mike] in the transfer of me to them"[42] and "I started resisting again" when 1stLt Alpha "turned me over to [Officer Mike]."[43] Put simply, *transfer* of custody necessarily implies *existence* of custody in the first instance.

*Third,* Appellant resisted Officer Mike only after Officer Mike tried to handcuff him. The following colloquy is instructive on this point:

> MJ: So after he turned you over to [Officer Mike], [Officer Mike] was, at that point, trying to, I guess, either cuff you—what was he trying to do?
>
> ACC: I believe handcuff me, sir.
>
> MJ: At that point, you start to resist from him; is that correct?
>
> ACC: Yes, sir. [44]

We have explained previously that an accused, already apprehended and placed into custody, cannot be guilty of resisting apprehension merely by resisting an enhanced form of restraint such as handcuffs.[45]

---

[41] *Ledbetter*, 2007 CCA LEXIS 314, at *8; *see also United States v. Coleman*, 41 C.M.R. 832, 835 (N.M.C.M.R. 1970) (holding that apprehension requires termination of locomotion); *see also* Marine Corps Order 5530.15, Enclosure 1, Chapter 2, Paragraph 4 (14 October 2008) ("The Officer of the Day . . . supervises the main guard. The Officer of the Day is charged with the execution of all orders of the Commanding Officer which concern the security of the area within the assigned jurisdiction.")

[42] R. at 33.

[43] *Id.*

[44] *Id.* at 34.

[45] *See United States v. Brun*, NMCMR No. 89 1960, 1990 CMR LEXIS 369, at *2 (N.M.C.M.R. 20 Apr 1990) (unpub. op.) (citing *United States v. Chavez*, 6 M.J. 615 (A.C.M.R. 1978)).

*Fourth,* Appellant agreed with the military judge that there was at least "a little break in time" between the Appellant's altercation with 1stLt Alpha and his struggle against Officer Mike.[46]

*Fifth*, while entertaining arguments on the Defense's *Quiroz* motion, the military judge failed to reopen the providence inquiry despite the *trial counsel's* argument that the two altercations were not part of the same course of conduct.[47] The trial counsel stated unequivocally that "[t]here was a difference in time that wasn't part of the same melee with [1stLt Alpha]" and that there was "some intervening time" where the resistance against 1stLt Alpha "had terminated prior to it then starting up in a different form with [Officer Mike]."[48]

*Sixth,* in ruling on the *Quiroz* motion, the military judge found "at least some break in time" between the two altercations, "from the apprehension to the transfer" and, "that these would be distinctly separate acts."[49] In so doing, the military judge explicitly distinguished *the apprehension* from *the transfer*, and yet, despite sounding this clear alarm that further inquiry was required, the military judge made no further effort to resolve Appellant's custodial status at the time of the alleged resistance.

*3. Conclusion*

We may not lightly reverse the trial court's judgment to accept Appellant's guilty plea and may do so only for a substantial basis in law or fact. In that light, we have carefully reviewed the record for evidence tending to show that Appellant was not in custody at the time of his alleged resistance. The Government argues certain passages in the record show that Appellant "continually resisted [1stLt Alpha] through squirming, spitting, being combative, and attempting to escape."[50] However, there is significant evidence in the record, to say nothing of the trial counsel's own representations, that suggests that Appellant was lawfully apprehended and taken into custody. The military judge failed to reopen the providence inquiry to ask Appellant about the conflict in the evidence on this important legal point. After all, as we explained above, post-apprehension resistance and attempts

---

[46] R. at 34.

[47] *Id.* at 52.

[48] *Id.* at 53.

[49] *Id.* at 54.

[50] Appellee's Answer of 13 Dec 19 at 11 (internal quotation marks omitted).

to escape from custody do not constitute resisting apprehension.[51] Most importantly, when considering a plea's providence, we are charged with reviewing not just certain evidence but the entire record.

Based on that review of the entire record, for the reasons stated above, we find Appellant's plea statements and other evidence of record plainly raised a possible defense to resisting apprehension. The military judge's failure to inquire further to resolve this matter constituted an abuse of discretion. Accordingly, we find a substantial basis in law or fact to question the providence of Appellant's guilty plea to Specification 2 of the Additional Charge. Therefore, we set aside the guilty finding and dismiss Specification 2 of the Additional Charge.

## C. Sentence Reassessment

Having dismissed Specification 2 of the Additional Charge, we must now consider whether we can reassess the sentence. In the event of such dismissal, regarding remedy, the parties concurred that we should reassess and affirm the sentence as adjudged and approved by the convening authority.[52] We agree.

We have "broad discretion" when reassessing sentences.[53] However, we can only reassess a sentence if we are confident "that, absent any error, the sentence adjudged would have been of at least a certain severity . . . ."[54] A reassessed sentence must not only "be purged of prejudicial error [but] also must be 'appropriate' for the offense[s] involved."[55]

We consider the following *Winckelmann* factors when deciding whether sentence reassessment is appropriate:

> (1) [Whether there have been] [d]ramatic changes in the penalty landscape and exposure[;]
>
> (2) Whether an appellant chose sentencing by members or a military judge alone[;] . . .

---

[51] *MCM,* pt. IV, ¶19.c.(1)(c); *Ledbetter*, 2007 CCA LEXIS 314, at *6.

[52] Appellant's Brief of 13 Nov 19 at 9; Appellee's Answer at 13.

[53] *United States v. Winckelmann*, 73 M.J. 11, 12 (C.A.A.F. 2013).

[54] *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986).

[55] *Id.*

(3) Whether the nature of the remaining offenses capture[s] the gravamen of criminal conduct included within the original offenses and, in related manner, whether significant or aggravating circumstances addressed at the court-martial remain admissible and relevant to the remaining offenses[; and]

(4) Whether the remaining offenses are of the type that judges of the courts of criminal appeals should have the experience and familiarity with to reliably determine what sentence would have been imposed at trial.[56]

After analyzing the *Winckelmann* factors, we can confidently and reliably determine that Appellant's sentence would be unchanged. Appellant was convicted in a judge alone trial of assault consummated by a battery on a petty officer by putting his hands on the victim's neck and pushing him toward the edge of the third story of the barracks, and resisting apprehension by a commissioned officer and a civilian PMO. The military judge sentenced Appellant to confinement for 60 days, reduction to pay grade E-1, and a bad-conduct discharge.

While not insignificant, the specification alleging resisting apprehension against the civilian PMO forms only a piece of Appellant's overall misconduct on the evening in question. We do not see a dramatic change in the sentencing landscape with the dismissal of this one specification. We find that "the nature of the remaining offenses capture[s] the gravamen" of the originally charged criminal conduct,[57] i.e., physical violence against a fellow Naval Service Member and defiant resistance against the Service's lawful writ to quell disturbances through lawful apprehension. This sort of misconduct is readily familiar to military appellate judges. For these reasons we are satisfied that, absent the dismissed specification, the court-martial would have adjudged no less of a sentence to Appellant—confinement for 60 days, reduction to pay grade E-1, and a bad-conduct discharge. We find this sentence to be an appropriate punishment for the remaining convictions and this offender—thus satisfying the requirement for a reassessed sentence both purged of error and appropriate.[58]

---

[56] *Winckelmann,* 73 M.J. at 15-16 (citations omitted).

[57] *Id.* at 16.

[58] *Sales*, 22 M.J. at 308.

### III. CONCLUSION

We have carefully considered the record, each of the specified issues, and the parties' submissions. We find improvident Appellant's guilty plea to Specification 2 of the Additional Charge. The guilty finding to that specification is hereby **SET ASIDE**. Specification 2 of the Additional Charge is hereby **DISMISSED**. Following this corrective action, we conclude that the remaining findings and the reassessed sentence are correct in law and fact and that no error materially prejudiced Appellant's substantial rights.[59] Accordingly, the findings as modified and the sentence as reassessed are **AFFIRMED**.

Senior Judge STEPHENS and Judge LAWRENCE concur.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court

---

[59] UCMJ arts. 59, 66.