UNITED STATES

v.

**Senior Airman John D. HANDY, FR216–90–8441, United States Air Force.**

**ACM 32935.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 20 Aug. 1997.

Decided 24 March 1998.

Appellate Counsel for Appellant: Colonel Douglas H. Kohrt, Lieutenant Colonel Kim L. Sheffield, and Captain Jeffrey B. Miller.

Appellate Counsel for the United States: Colonel Brenda J. Hollis, Lieutenant Colonel Michael J. Breslin, and Captain Steven D. Dubriske.

Before PEARSON, Senior Judge, MORGAN and SPISAK, Appellate Military Judges.

## OPINION OF THE COURT

PEARSON, Senior Judge:

Appellant argues the trial judge erred in accepting his guilty pleas to being absent without leave, using cocaine three times, and possessing drug paraphernalia because "the record contained evidence of a defense of mental responsibility in substantial conflict" with those pleas. While we agree that the trial judge failed to nail down that issue when confronted with it, we find no "substantial conflict" and affirm.

## FACTS

The facts of this case are quite unique. Normally, people use drugs unlawfully to get a "recreational" high—appellant, as stipulated by the government, used them to attempt suicide.

Appellant first attempted suicide in high school. After joining the Air Force, he tried to "cope with depression" by drowning it in up to "20 beers in a day." His emotional crisis peaked during an assignment to Korea when he was separated from his wife. In June 1996, he attempted suicide "by getting drunk and taking a bottle of aspirin." Rescued by his roommate, he received medical treatment and entered alcohol rehabilitation. Several months later, he attempted suicide again by cutting his wrists with a razor blade. He spent about eight weeks in the hospital and was transferred to Dover Air Force Base, Delaware, in November 1996.

On the evening of February 17, 1997, appellant argued with his wife at their base residence. According to the stipulated facts, agreed to by the government, he "decided he was going to kill himself." Following through on that plan, he went to a known drug area and purchased powdered cocaine, which he melted down and injected. He also took 100 sleeping pills along with prescription anti-depressants, topped off by a bourbon-cocaine chaser. When appellant failed to show-up for a detail the next morning, the unit first sergeant went looking for him, finding him at his base house "laying naked on the bed" and unable to walk without falling. After initial medical treatment, appellant spent the next several weeks in the mental health ward.

On March 21, 1997, appellant failed to show-up for a medical appointment. Once again, the first sergeant went scouting. He found a note on appellant's front door which read "I'm going to blow your fucking head off. If you continue invading my privacy. A message, no a promise from somebody who just ain't all there. Try me." He couldn't locate appellant. That evening, appellant snorted more cocaine and passed out from a drug-alcohol mixture. According to appel-

lant, he once more "tried to commit suicide with cocaine and alcohol."

Appellant failed to report for duty (this one was charged) on March 30. According to appellant, he "tied a rope around [his] neck" but failed to follow through. Instead, he "got sleeping pills, cocaine, and alcohol and tried an overdose." Ultimately he was found, and his parents drove him back to his unit on April 1. To deter future incidents, the government placed appellant in pretrial confinement where he remained until trial.

The parties stipulated that appellant was "diagnosed as having three (3) conditions during the time period that his criminal activity was conducted:" he was alcohol dependent, a cocaine abuser, and suffered from a borderline personality disorder. Appellant also discussed his "problems" and "disorders" during his unsworn statement at sentencing.

## DISCUSSION

■ Attacks on guilty pleas are a significant part of our appellate workload since appellate defense counsel will litigate the providence of a guilty plea at the drop of a hat. In the usual course of events, an accused pleads guilty at trial, normally with some form of plea bargain capping the sentence, and then tries to squirm out of it on appeal. In most such cases, the appellant claims to have raised some potential defense at trial which the judge overlooked, for, unlike most of their civilian counterparts, military accused may only plead guilty if they are in fact guilty. For that reason, we must set aside any guilty plea where a substantial conflict exists between the plea and the accused's statements at trial or other evidence of record. *See, e.g.*, Article 45(a), UCMJ, 10 U.S.C. § 845(a); RULE FOR COURTS-MARTIAL (R.C.M.) 910(e); *United States v. Peterson*, 47 M.J. 231 (1997); *United States v. Faircloth*, 45 M.J. 172 (1996). Therefore, when an accused raises a potential defense at trial, the judge should ensure the accused disclaims it before accepting a guilty plea. *United States v. Prater*, 32 M.J. 433, 436 (C.M.A.1991).

■ Here, we focus on the evidence concerning appellant's mental state at the time of the offenses. Lack of mental responsibility at the time of the offense is an affirmative defense. Lack of mental responsibility occurs when the accused, as a result of a severe mental disease or defect, is unable to appreciate the nature and quality or the wrongfulness of the act. R.C.M. 916(k)(1). However, unlike most other affirmative defenses, the accused has the burden of establishing, by clear and convincing evidence, that the defense applies, that is that he or she was not mentally responsible at the time of the offense. R.C.M. 916(b), (k)(3)(A). For other affirmative defenses, the burden falls on the prosecution to prove, beyond a reasonable doubt, that the defense does not exist. R.C.M. 916(b).

■ Of course, an accused may also offer mental health evidence, short of lack of mental responsibility, to negate an element of the offense that requires a specific intent or knowledge. *See Ellis v. Jacob*, 26 M.J. 90 (C.M.A.1988)(construing Article 50a(a), UCMJ, 10 U.S.C. § 850a(a), as not precluding partial mental responsibility evidence to negate an element); *but see* R.C.M. 916(k)(2). Although partial mental responsibility is not a true affirmative defense, the prosecution must prove any specific intent or knowledge element beyond a reasonable doubt. *See* Article 51, UCMJ, 10 U.S.C. § 851.

■ Consequently, unresolved evidence bearing on an accused's mental health might reasonably raise a defense or otherwise conflict with a guilty plea, depending on the facts of the case. *See United States v. Logan*, 31 M.J. 910 (A.F.C.M.R.1990). Moreover, if a substantial question arises on appeal concerning an appellant's mental responsibility, a Court of Criminal Appeals may direct an inquiry into an appellant's mental responsibility at the time of the offense even though that defense was not litigated at trial. *United States v. Massey*, 27 M.J. 371 (C.M.A.1989). In this case, the evidence of appellant's suicide attempts and mental state was inextricably linked to the charged offenses. Thus, the trial judge should have realized that such evidence was sitting there like a mine, just waiting to

sink this guilty plea ship on appeal unless reckoned with on the record.

■ Whenever a judge encounters evidence during a guilty plea inquiry which bears on an accused's mental responsibility, the judge should ask defense counsel if an inquiry into the accused's mental condition was made under R.C.M. 706. If it was, the judge should attach the non-privileged portion of the mental inquiry report as an appellate exhibit.

■ Moreover, whenever evidence of an accused's mental health problems rears its head, the judge should question defense counsel on whether he or she has explored the mental responsibility angle of the case, including whether evidence exists to negate an intent or knowledge element of the offense. The judge should also ask the accused if defense counsel has discussed that issue and how it may apply to the particular case. The judge should accept the guilty plea only if the mental issues are resolved for the record and the accused disclaims any potential mental "defense," full or partial.

■ Unfortunately, none of that occurred on the record here. However, the allied papers contain a "sanity board" report dated July 21, 1997. According to the report, a forensic psychiatrist found that appellant did not suffer from a mental disease or defect and was mentally responsible at the time of the offense. Consequently, we do not find that the record of trial, or appellant's statements, raise a substantial conflict with the guilty pleas based on the affirmative defense of lack of mental responsibility.

■ As for partial mental responsibility, appellant's absence offense was only a general intent crime. Consequently, the concept of partial mental responsibility was not a player for that offense. The drug offenses, on the other hand, required that appellant have knowledge of the contraband nature of the substance used or paraphernalia possessed. *See* MANUAL FOR COURTS-MARTIAL, UNITED STATES, Part IV, ¶¶ 10b(3); 37b(2), c(10)(1995 ed.). Even so, we are convinced that appellant did not raise a substantial conflict with his plea through any partial mental responsibility evidence.

Appellant freely admitted that he knowingly chose cocaine to overdose on, not once, but three times—knowingly using a controlled substance to kill oneself is not a defense. At most, we only find a mere possibility that appellant could have used evidence of his mental condition to litigate the knowledge element of the drug-related offenses, an opportunity he waived by his guilty pleas. *See Peterson,* 47 M.J. 231.

Finally, we note that the convening authority approved the adjudged sentence of a bad-conduct discharge, 8 months confinement, and reduction to E–1, when his pretrial agreement with the appellant capped the confinement at 6 months. According to appellate defense counsel, appellant was released from jail at the agreed upon time based on a 6–month sentence. Thus, we declare as null and void that portion of the action which purports to approve any term of confinement in excess of 6 months, but find further sentence relief is not warranted.

Accordingly, the findings and sentence, as modified, are

AFFIRMED.

Judges MORGAN and SPISAK concur.