*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

_____

Before
GASTON, HOUTZ, and MYERS
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**William A. NELSON**
Sergeant (E-5), U.S. Marine Corps
*Appellant*

**No. 202000139**

_____

Decided: 29 November 2021

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judges:
K. Scott Woodard (arraignment)
Kyle G. Phillips (motions and trial)

Sentence adjudged 11 February 2020 by a special court-martial convened at Marine Corps Base Camp Lejeune, North Carolina, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: reduction to E-1, confinement for 148 days, and a bad-conduct discharge.

For Appellant:
*Commander Jonathan Riches, JAGC, USN*
*Lieutenant Megan E. Horst, JAGC, USN*

For Appellee:
*Lieutenant Catherine M. Crochetiere, JAGC, USN*
*Major Kerry E. Friedewald, USMC*

Senior Judge GASTON delivered the opinion of the Court, in which Judges HOUTZ and MYERS joined.

————————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

————————————

GASTON, Senior Judge:

Appellant was convicted, pursuant to his pleas, of four specifications of unauthorized absence, disrespect toward a superior noncommissioned officer, and wrongful use of marijuana and cocaine, in violation of Articles 86, 91, and 112a, Uniform Code of Military Justice [UCMJ].[1]

He asserts three assignments of error [AOEs]: (1) his trial defense counsel was ineffective in not seeking a Rule for Courts-Martial [R.C.M.] 706 mental health examination of Appellant or introducing evidence of Appellant's mental health condition when Appellant had been diagnosed with significant mental health disorders at both the time of the offenses and the time of his guilty pleas; (2) the military judge erred in failing to inquire into Appellant's mental condition when evidence elicited at the court-martial showed Appellant was receiving mental health treatment at the time of the offenses; and (3) the convening authority abused his discretion by not inquiring into Appellant's mental health condition before the referral of charges and in approving the sentence when the convening authority was aware, or reasonably should have been aware, that Appellant was receiving mental health treatment at the time of the offenses and the court-martial. We find merit in Appellant's first AOE and set aside the findings and sentence.

## I. BACKGROUND

In late-July 2019, after transferring to a new battalion, Appellant sought emergency medical care for anxiety, suicidal thoughts, and auditory hallucinations (i.e., hearing voices). He was admitted to inpatient psychiatric care for four days, prescribed anti-anxiety medication, and provisionally diagnosed

---

[1] 10 U.S.C. §§ 886, 891, 912a.

with adjustment disorder with mixed anxiety and depressed mood. Upon discharge, he was deemed not psychiatrically fit for full duty and referred for outpatient mental health care.

The following month, he was late to work twice. On 21 August, he overslept and arrived an hour late. On 30 August, he reported to his normal place of duty 90 minutes late after a field exercise.

At a mental health appointment on 10 September, Appellant was diagnosed with bipolar disorder, of which he reported a family history. During the appointment he was angry, yelling, and cursing; was unable to recall any triggering event; and reported randomly experiencing extreme highs and lows. He abruptly and angrily left the appointment without checking out with the psychiatric staff, of which his command was notified.

When he returned to work and was asked by his first sergeant (E-8) how the appointment went, Appellant "made a loud grunting, angry noise,"[2] and started walking around "yelling and stomping his feet and balling up his hands."[3] He went out to his car and could be heard yelling at passersby in the garage, before driving off at a high rate of speed. He was detained at the base gate and brought back to speak to the battalion's sergeant major (E-9), to whom he said, "I don't give a s[***] about you," balled up his fists repeatedly, and was "irate and could not compose himself to the point [the sergeant major] thought [he] was going to have to defend [him]self."[4]

Command members took Appellant to the base hospital and tried to check him back into the mental health ward. When the hospital would not admit him, he was released and went to a friend's house, where he used marijuana and cocaine. He then failed to report for a legal appointment the following morning and was found in his car in a Marine Corps Exchange parking lot. He was taken back to the hospital, where he was uncooperative and combative; appeared intoxicated and admitted drinking vodka earlier that morning; tried to swallow a bottle of medication; spit out the activated charcoal administered to counteract it; and ultimately had to be given sedatives and injected with anti-psychotic medication. He was then admitted again to inpatient psychiatric care for several days.

---

[2] Pros. Ex. 5 at 1.

[3] Pros. Ex. 4 at 1.

[4] Pros. Ex. 2 at 1.

Upon discharge from the mental health ward, Appellant was placed in pretrial confinement [PTC] and charged with various offenses for the above-described acts. He was assigned a trial defense counsel [TDC], who was made aware of his erratic behavior, the fact that he had been receiving mental health care, and his eventual "breakdown" at the hospital on 11 September.[5] TDC advised Appellant "to seek any mental health treatment he could get at the brig, document it, and [TDC] would coordinate with his command if he needed more help than the brig could provide."[6] Appellant said he was fine; attributed his breakdown to his drug use; appeared coherent, calm, and able to understand their discussions; and told TDC to focus on getting him out of the brig.

TDC advised Appellant that he could request an R.C.M. 706 examination to determine whether Appellant lacked mental responsibility at the time of the offenses, which would be a defense against the charges. Appellant admitted he had "communicated thoughts of self-harm" in the brig, but said he did not want to pursue an R.C.M. 706 examination because he believed it would delay his release from confinement.[7]

Subsequently, after his request for separation in lieu of trial was denied, Appellant and TDC again discussed requesting an R.C.M. 706 examination. When Appellant told TDC he "could get a diagnosis" and "be as crazy as you need me to be," TDC advised against such exaggeration.[8] However, TDC decided not to request an R.C.M. 706 examination, noting that Appellant had not informed him about any mental health diagnoses other than anxiety and did not sign an authorization for his mental health records. TDC believed he "had insufficient evidence to indicate a lack of mental responsibility defense may exist, and [he] believed any attempt by [Appellant] to feign a mental illness would be against his interest and counter-productive given [Appellant's] stated desire to get out of the brig as soon as possible and his statements expressing mental responsibility for the charged acts."[9]

---

[5] TDC Aff. at 2. For purposes of our analysis, we accept as uncontroverted the facts contained in the TDC's affidavit submitted by the Government. *See United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997).

[6] TDC Aff. at 2.

[7] *Id.* at 3.

[8] *Id.*

[9] *Id.* at 4.

TDC negotiated a plea agreement under which Appellant would plead guilty to all charged offenses and waive any administrative discharge board in exchange for the convening authority limiting confinement to the time Appellant had served in PTC. Prior to trial, when Appellant asked whether his psychiatrist should be called as a sentencing witness, TDC advised against having the psychiatrist testify because "testimony regarding [Appellant's] mental health treatment could potentially reopen providency."[10] TDC then advised Appellant once again that it was "not too late to request an R.C.M. 706 [inquiry]."[11]

Appellant decided to proceed with the guilty plea. He signed a stipulation of fact admitting guilt to the charged offenses. At trial, he pleaded and was found guilty of the offenses after a thorough providence inquiry, during which he denied having "any mental or physical infirmity" or "legal justification or excuse."[12] TDC did not call Appellant's psychiatrist as a sentencing witness. After trial, Appellant continued receiving psychiatric care for bipolar disorder and other issues.

## II. DISCUSSION

Lack of mental responsibility is an affirmative defense to any offense.[13] The legal standard for this defense is whether, "at the time of the commission of the acts constituting the offense, the accused, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his or her acts."[14] The term, "severe mental disease or defect," does not include an "abnormality manifested only by repeated criminal or otherwise antisocial conduct, or minor disorders such as nonpsychotic behavior disorders and personality defects."[15] However, "bipolar disorder, like

---

[10] *Id.* at 5; *see also* Appellant decl. at 2 (stating TDC advised Appellant against having his psychiatrist testimony because "it could impact the providence of [Appellant's] pleas").

[11] TDC Aff. at 5.

[12] R. at 90, 97, 102, 109–10, 123, 128.

[13] R.C.M. 916(k)(1).

[14] *Id.*

[15] R.C.M. 706(c)(2)(A).

other disorders, may exist with enough severity to raise a substantial question regarding the issue of the accused's mental responsibility."[16]

"Historically, [our superior court has] given preferential treatment to the question of mental responsibility of a military member, even though the matter was not litigated at trial."[17] The court has emphasized it is "the duty of *all participants* in the process to bring to the attention of the convening authority or military judge any condition or behavior that may *reasonably call into question* the mental responsibility or competence of an accused."[18] R.C.M. 706 establishes a mandatory reporting requirement in this regard:

> If it appears to any commander who considers the disposition of charges, or to any preliminary hearing officer, trial counsel, defense counsel, military judge, or member that there is reason to believe that the accused lacked mental responsibility for any offense charged or lacks capacity to stand trial, that fact and the basis of the belief or observation *shall* be transmitted through appropriate channels to the officer authorized to order an inquiry into the mental condition of the accused.[19]

This requirement applies even if the case is resolved through guilty pleas, because "[a]n accused cannot 'make an informed plea without knowledge that he suffered a severe mental disease or defect at the time of the offense.'"[20]

## A. Ineffective Assistance of Counsel

Appellant asserts TDC was ineffective in not requesting an R.C.M. 706 inquiry or introducing evidence of Appellant's mental health condition during sentencing. We review claims of ineffective assistance of counsel de novo.[21]

---

[16] *United States v. Shaw*, 64 M.J. 460, 463 (C.A.A.F. 2007).

[17] *United States v. Navarette*, No. 20-0195, ___ M.J. ___, 2021 CAAF LEXIS 746, *10 (C.A.A.F. Aug. 20, 2021) (quoting *United States v. Young*, 43 M.J. 196, 197 (C.A.A.F. 1995)).

[18] *United States v. Best*, 61 M.J. 376, 382 (C.A.A.F. 2005) (citation omitted) (emphasis added).

[19] R.C.M. 706(a) (emphasis added).

[20] *United States v. Riddle*, 67 M.J. 335, 338 (C.A.A.F. 2009) (quoting *United States v. Harris*, 61 M.J. 391, 398 (C.A.A.F. 2005)).

[21] *United States v. Mazza*, 67 M.J. 470, 474 (C.A.A.F. 2009).

"In order to prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice."[22] We "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[23] To overcome this presumption, an appellant must demonstrate "(1) a deficiency in counsel's performance that is so serious that counsel was not functioning as the 'counsel' guaranteed the [accused] by the Sixth Amendment; and (2) that the deficient performance prejudiced the defense through errors so serious as to deprive the [accused] of a fair trial, a trial whose result is reliable."[24]

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary," and "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."[25] Generally, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the [accused's] own statements or actions."[26] However, as our sister court has held, and we agree, R.C.M. 706's mandatory reporting requirement "clearly establishes the duty of trial defense counsel to report sanity issues to an appropriate authority. Notably, in the case of trial defense counsel, it does not allow for consideration of trial tactics or strategy."[27]

Applying these standards, we find TDC was deficient in not requesting an R.C.M. 706 inquiry in this case. Having been made aware of Appellant's mental health treatment, his erratic behavior, and his eventual breakdown, TDC discussed requesting an R.C.M. 706 inquiry with Appellant on three separate occasions. Although TDC concluded he had insufficient evidence to indicate a lack of mental responsibility defense may exist, the purpose of an R.C.M. 706 inquiry is to assess and develop the evidence to inform such a

---

[22] *United States v. Green*, 68 M.J. 360, 361–62 (C.A.A.F. 2010) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

[23] *Strickland*, 466 U.S. at 689.

[24] *United States v. Tippit*, 65 M.J. 69, 76 (C.A.A.F. 2007) (internal quotation marks and citations omitted).

[25] *Strickland*, 466 U.S. at 691.

[26] *Id.*

[27] *United States v. Talley*, No. ACM 36491, 2007 CCA LEXIS 535, *15 (A.F. Ct. Crim. App. Nov. 30, 2007) (unpublished).

determination. Here, the inquiry would have revealed, among other things, that around the time of the charged offenses Appellant was diagnosed with bipolar disorder, which our superior court has specifically found can raise a substantial question regarding an accused's mental responsibility.

While we recognize "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight,"[28] R.C.M. 706's standard of "*reason to believe* that the accused lacked mental responsibility for *any* offense charged" is very low.[29] In light of his extensive psychiatric treatment and increasingly erratic, manic behavior, the evidence reasonably called into question Appellant's mental responsibility at the time of the charged offenses. TDC implicitly recognized this when he advised against having Appellant's psychiatrist testify at trial in order to avoid any issues with the providence of Appellant's guilty pleas—which would only occur if the testimony raised a possible defense such as lack of mental responsibility—and then further advised Appellant that it was still "not too late to request an R.C.M. 706 [inquiry]."[30]

We find that under the circumstances, TDC had a duty to bring Appellant's mental health issues to the attention of the convening authority or the military judge, so that Appellant could be properly examined pursuant to R.C.M. 706. Instead, TDC elected to treat the issue as a matter of trial strategy and client decision, which R.C.M. 706's mandatory reporting requirement simply does not permit. While we do not doubt that TDC proceeded in this fashion because he believed it was in his client's best interests, the lack of an R.C.M. 706 inquiry meant Appellant was in a position of not knowing whether his documented disorder constituted a severe mental disease or defect, such that he lacked mental responsibility for the charged acts.

We further find that the deficiency resulted in prejudice. In a guilty plea context, "[t]he second [*Strickland*] prong is modified to focus on whether the 'ineffective performance affected the outcome of the plea process.'"[31] Thus, to

---

[28] *Strickland*, 466 U.S. at 689.

[29] R.C.M. 706(a) (emphasis added).

[30] TDC Aff. at 5. As for TDC's concern about the possibility of Appellant attempting to feign or exaggerate his mental illness, we note that statements made by an accused during an R.C.M. 706 examination are privileged under Military Rule of Evidence 302.

[31] *United States v. Bradley*, 71 M.J. 13, 16 (C.A.A.F. 2012) (quoting *Hill v. Lockhart,* 474 U.S. 52, 59 (1985)).

satisfy the prejudice prong, the appellant must "show specifically that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."[32] "A reasonable probability is a probability sufficient to undermine confidence in the outcome. That requires a substantial, not just conceivable, likelihood of a different result."[33] In other words, the appellant must satisfy the "objective inquiry" of showing that but for counsel's deficiency, "it would have been rational for him not to plead guilty."[34]

Like our superior court, "[w]e do not see how an accused can make an informed plea without knowledge that he suffered a severe mental disease or defect at the time of the offense."[35] Here, as a result of his lack of knowledge about whether he had a viable defense of lack of mental responsibility, Appellant was unable to make an informed plea. In light of his diagnosis and the erratic behavior it could account for, we find that the failure to request an R.C.M. 706 examination affected the outcome of the plea process. Had an R.C.M. 706 inquiry been requested, we find that under the circumstances there is a substantial likelihood of a different result, such that it would have been rational for Appellant to plead not guilty to the offenses. Accordingly, we conclude that we must set aside the findings and sentence, which we accomplish in our decretal paragraph.

## B. Inquiry by the Military Judge into Appellant's Mental Health Condition

Appellant asserts the military judge erred in failing to inquire into Appellant's mental condition when evidence elicited at the court-martial showed Appellant was receiving mental health treatment at the time of the offenses. We review a military judge's decision to accept a guilty plea for an abuse of discretion.[36] A military judge has abused his or her discretion in accepting a

---

[32] *Tippit*, 65 M.J. at 76.

[33] *Bradley*, 71 M.J. at 16 (citation and internal quotation marks omitted).

[34] *Id.*

[35] *Harris*, 61 M.J. at 398.

[36] *Shaw*, 64 M.J. at 462.

guilty plea if the record shows a "substantial basis in law or fact for questioning the plea."[37]

Any request for an R.C.M. 706 inquiry "should be granted if it is not frivolous and is made in good faith."[38] However, "there is no per se requirement that a convening authority or military judge order a sanity board absent a sufficient proffer that such a proceeding is necessary."[39] As our superior court has explained,

> [a] military judge can presume, in the absence of contrary circumstances, that the accused is sane and, furthermore, that counsel is competent. Should the accused's statements or material in the record indicate a history of mental disease or defect on the part of the accused, the military judge must determine whether that information raises either a conflict with the plea and thus the possibility of a defense or only the "mere possibility" of conflict. The former requires further inquiry on the part of the military judge, the latter does not. This is a contextual determination by the military judge. However, we have additionally indicated that it is prudent, but we emphasize not always required, to conduct further inquiry when a significant mental health issue is raised, regardless of whether a conflict has actually arisen.[40]

---

[37] *United States v. Spykerman*, 81 M.J. 709, 735 (N-M. Ct. Crim. App. 2021) (quoting *United States v. Moon*, 73 M.J. 382, 386 (C.A.A.F. 2014)) (internal quotation marks omitted).

[38] *United States v. Nix*, 36 C.M.R. 76, 80 (C.M.A. 1965).

[39] *United States v. Pattin*, 50 M.J. 637, 639 (Army Ct. Crim. App. 1999) (citing *United States v. English*, 47 M.J. 215, 217 (C.A.A.F. 1997)).

[40] *Riddle*, 67 M.J. at 338 (citations omitted). Our sister court has provided the following guidance on how trial judges should address such issues:

> Whenever a judge encounters evidence during a guilty plea inquiry which bears on an accused's mental responsibility, the judge should ask defense counsel if an inquiry into the accused's mental condition was made under R.C.M. 706. If it was, the judge should attach the non-privileged portion of the mental inquiry report as an appellate exhibit.

> Moreover, whenever evidence of an accused's mental health problems rears its head, the judge should question defense counsel on whether he or she has explored the mental responsibility angle of the

Here, the military judge was made aware of Appellant's mental health treatment through witness testimony at a pretrial hearing. The witness testified that Appellant had a mental health appointment the morning he left in anger from his place of duty, and command members then searched for him, among other places, at the hospital's mental health department.[41] The military judge was also made aware of Appellant's erratic behavior on that day through the admission of various witness statements during the Government's sentencing case. However, the military judge was not presented evidence of Appellant's specific mental health issues, let alone one potentially amounting to a "severe mental disease or defect," so as to raise a conflict with Appellant's pleas and the possibility of a defense. At most, the pretrial witness testimony and other evidence presented the mere possibility of a conflict, particularly in light of the stipulation of fact and the providence inquiry, during which Appellant denied having any mental or physical infirmity or legal justification or excuse for the offenses. Thus, while inquiring further into Appellant's mental condition would undoubtedly have been prudent, we find that under the circumstances the military judge did not abuse his discretion in not doing so.

## C. Inquiry by the Convening Authority into Appellant's Mental Health Condition

Finally, Appellant asserts the convening authority abused his discretion by not inquiring into Appellant's mental health condition before referring the charges and later approving the sentence, when he was aware, or reasonably should have been aware, that Appellant was receiving mental health treatment at the time of the offenses and the court-martial. We review a convening authority's decision "to refer charges to court-martial, the level of the forum and any other aspects concomitant with that authority" for an abuse of

---

case, including whether evidence exists to negate an intent or knowledge element of the offense. The judge should also ask the accused if defense counsel has discussed that issue and how it may apply to the particular case. The judge should accept the guilty plea only if the mental issues are resolved for the record and the accused disclaims any potential mental "defense," full or partial.

*United States v. Handy*, 48 M.J. 590, 593 (A.F. Ct. Crim. App. 1998) (finding no conflict with guilty plea where a "sanity board" was conducted and found the appellant did not suffer from a mental disease or defect and was mentally responsible at the time of the offense).

[41] R. at 26, 32–33.

discretion.[42] "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous."[43]

Here, the evidence supports that, at the time he referred the charges, the convening authority was aware of Appellant's erratic behavior following an assessment that he was not psychologically fit for full duty at the convening authority's battalion. And the battalion's senior enlisted leaders were aware that Appellant had been receiving inpatient and outpatient mental health treatment. But the record does not reveal the extent to which the convening authority was apprised of Appellant's specific mental health issues and treatment. While he sat in the gallery during Appellant's trial (to which the Defense waived any objection), the convening authority was not present at the pretrial motions session when a witness made reference to Appellant's mental health treatment.[44] Nor was evidence of Appellant's mental condition presented either at trial or in Appellant's subsequent clemency request. Thus, we are unable to determine whether the convening authority had reason to believe that Appellant was unable to appreciate the nature and quality or the wrongfulness of the charged offenses as a result of a severe mental disease or defect. We therefore find that, while it certainly would have been prudent and within his purview to do so, the convening authority did not abuse his discretion in not inquiring further into Appellant's mental health condition.

## III. CONCLUSION

The findings and sentence are **SET ASIDE**. The record is returned to the Judge Advocate General of the Navy. A rehearing is authorized, provided an inquiry into Appellant's mental responsibility for the charged offenses is first ordered under R.C.M. 706.

Judges HOUTZ and MYERS concur.

---

[42] *United States v. Allen*, 31 M.J. 572, 591 (C.M.A. 1990).

[43] *United States v. White*, 69 M.J. 236, 239 (C.A.A.F. 2010).

[44] R. at 72.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court