*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
KISOR, THORNHILL, and HARRELL
Appellate Military Judges

_____

## UNITED STATES
*Appellee*

**v.**

## Maria B. SKINNER
Aviation Boatswain's Mate Aircraft Handler Airman (E-3)
U.S. Navy
*Appellant*

### No. 202300265

_____

Decided: 31 January 2025

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Andrea Lockhart (arraignment and motions)
Philip Hamon (trial)

Sentence adjudged 28 July 2023 by a special court-martial tried at Naval Base San Diego, California, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: reduction to E-1 and confinement for thirty days.[1]

For Appellant:
*Lieutenant Commander Leah M. Fontenot, JAGC, USN*

---

[1] Appellant was credited with forty-six days of confinement credit.

For Appellee:
*Captain Jacob R. Carmin, USMC*

Judge THORNHILL delivered the opinion of the Court, in which Senior Judge KISOR and Judge HARRELL joined.

———————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

———————————

THORNHILL, Judge:

Appellant was convicted, consistent with her pleas, of one specification of unauthorized absence, in violation of Article 86, Uniform Code of Military Justice (UCMJ), and one specification of wrongful use of marijuana, in violation of Article 112a, UCMJ.[2]

Seventeen days before her guilty plea hearing, Appellant was evaluated by a forensic psychiatrist in accordance with Rule for Courts-Martial (R.C.M.) 706.[3] The forensic psychiatrist concluded that Appellant "was able to fully appreciate the nature and quality and wrongfulness of her conduct."[4] Appellant's trial defense counsel discussed the results of the R.C.M. 706 inquiry with Appellant and agreed that she "was not suffering a mental disease or defect and [was] able to perform in her own defense."[5] The forensic psychiatrist's conclusion was consistent with the two previous mental health evaluations that were conducted prior to Appellant's misconduct.[6] Appellant entered into a stipulation of fact wherein she stated: "I did not at any time suffer from a mental defect or disease that caused me to commit the offenses to which I am pleading

---

[2] 10 U.S.C. §§ 886, 912a. This case is before us on direct appeal submitted by Appellant pursuant to Article 66(b)(1), UCMJ, 10 U.S.C. § 866(b)(1).

[3] R. at 117; *see also* App. Ex. XXIV.

[4] App. Ex. XXIV.

[5] R. at 122-23, 163.

[6] *Compare* App. Ex. XXIV *with* Def. Ex. F. *and* Def. Ex. J.

guilty."[7] During her guilty plea hearing, Appellant confirmed that the statements contained in the stipulation of fact were true.[8] The military judge asked Appellant specific questions about her mental health struggles during her providence inquiry.[9]

Now—after receiving the full benefit of the plea agreement—Appellant asks us to set aside her convictions because the military judge did not inquire further into the possible defense of lack of mental responsibility. We disagree, find no prejudicial error, and affirm.

## I. BACKGROUND

Appellant underwent a psychological evaluation during boot camp in February 2020. The licensed clinical psychologist recommended her for administrative separation due to a diagnosis of unspecified mood disorder.[10] The licensed clinical psychologist opined: "[Appellant] is psychologically responsible for her behavior."[11] Appellant subsequently completed boot camp and follow-on school and reported to USS *Theodore Roosevelt* (CVN-71). Aboard the ship, Appellant was again evaluated by a mental health provider on 21 September 2022.[12] The provider diagnosed Appellant with Borderline Personality Disorder and recommended her for administrative separation. The provider concluded that Appellant was "mentally responsible for [her] behavior and possesses sufficient capacity to understand and cooperate in any applicable administrative proceedings."[13] Appellant's command initiated the administrative separation process.

On 4 January 2023, Appellant decided to leave the ship without authorization and drive across the country to her family's home in Virginia Beach, Virginia. Appellant notified her superiors that she could not remain on her ship.[14]

---

[7] Pros. Ex. 1.

[8] R. at 129-132.

[9] R. at 137-40; 207-11.

[10] Def. Ex. J.

[11] Def. Ex. J.

[12] Def. Ex. F.

[13] Def. Ex. F.

[14] R. at 137. (Appellant texted her "chief and first class" and "told them that [she] just couldn't be on the boat.").

While away from the ship and her duties, Appellant smoked marijuana. Appellant turned herself in to Navy authorities ninety-seven days later on 11 April 2023.

On 2 June 2023, Appellant entered into a plea agreement with the convening authority. She subsequently entered into a stipulation of fact with the Government on 7 June 2023.[15] Her guilty plea hearing was scheduled for 9 June 2023.[16] Prior to the guilty plea hearing, trial defense counsel raised concerns regarding Appellant's mental capacity and mental responsibility.[17] Trial defense counsel discussed these concerns with Appellant.[18] At the request of trial defense counsel, the military judge ordered the mental competency examination, which was completed approximately one month later.[19] The forensic psychiatrist made three findings. First, "[a]t the time of the alleged criminal conduct, [Appellant] did not have a severe mental disease or defect as defined by R.C.M. 706(c)(2)(A)."[20] Second, Appellant "at the time of the alleged criminal conduct, was able to fully appreciate the nature and quality and wrongfulness of her conduct."[21] Third, Appellant "does have sufficient mental capacity to understand the nature of the proceedings against her (trial by court martial) and to conduct or cooperate intelligently in the defense."[22]

Following the board results, Appellant re-entered into a plea agreement with the convening authority.[23] In the corresponding stipulation of fact, Appellant stated that she "did not at any time suffer from a mental defect or disease that caused me to commit the offenses to which I am pleading guilty."[24] The stipulation also provided that Appellant knowingly and voluntarily engaged in

---

[15] Pros. Ex. 1.

[16] R. at 72 & 79; *see also* App. Ex. XXI.

[17] R. at 77.

[18] R. at 77, 123.

[19] App. Ex. XXVIII.

[20] App. Ex. XXIV.

[21] App. Ex. XXIV.

[22] App. Ex. XXIV.

[23] App. Ex. XXIX.

[24] Pros. Ex. 1.

the misconduct and that she "did not commit the offenses to save myself or anyone else from death or grievous bodily harm."[25]

During her guilty plea hearing, Appellant agreed that she voluntarily entered into the stipulation of fact, that it was in her best interest to do so, and that everything in the stipulation of fact was true.[26] At multiple points during the providence inquiry, Appellant agreed that she entered into the conduct voluntarily and that no physical or mental infirmity prevented her from returning to the ship:

> MJ: Can you tell me in your own words why you believe you're guilty of [unauthorized absence]?
>
> A: Because I knew I was supposed to report to my boat, but instead I left.
>
> . . .
>
> MJ: Okay, was it a freely made decision on your part to leave and drive to Virginia Beach?
>
> A: Yes, Your Honor.
>
> MJ: Could you have remained on the THEODORE ROOSEVELT on 4 January if you had wanted to?
>
> A: Yes, Your Honor.
>
> MJ: Did you realize at the time that you left on 4 January that you were beginning a period of—of UA, of unauthorized absence?
>
> A: Yes, Your Honor.
>
> . . .
>
> MJ: Can you tell me in your own words why you believe you're guilty of [wrongful use of a controlled substance]?
>
> A: Because I knew it was marijuana and I smoked it.
>
> . . .
>
> MJ: And did you realize at the time that you were using [marijuana]?

---

[25] Pros. Ex. 1.

[26] R. at 129-131.

A:  Yes, Your Honor.

MJ: And how did you use it?

A:  I was smoking.

. . .

MJ: Could you have avoided using it if you had wanted to?

A:  Yes, Your Honor.[27]

Prior to accepting Appellant's guilty pleas, the military judge asked trial defense counsel about the R.C.M. 706 inquiry:

MJ: Does defense counsel agree, based on your review with the—
of the 706 results that you are comfortable proceeding that
the accused was not suffering a mental disease or defect and
is able to perform in her own defense?

DC: Yes, Your Honor.[28]

The military judge accepted Appellant's guilty pleas. During her unsworn statement, Appellant made several statements relating to her mental health struggles to include: "I was hearing voices telling me to do things, like to kill myself so I went back to my apport—my support system. So, I decided to choose my mental health and left."[29] Regarding her wrongful use of marijuana, Appellant stated that she "smoked marijuana" because she didn't have access to her medications and "just needed to get my mental health better before I went back to the ship."[30] Further, Appellant stated, "I knew if I stayed longer, any longer than I did on the ship I wouldn't have made it. Honestly, I just wanted to die."[31] Appellant "decided" to leave and "smoked marijuana" to improve her mental health—she understood that she could be sent to the brig as a result of her misconduct and tried to "mentally prepare[ ]" herself for it.[32] Trial defense

---

[27] R. 134-44.

[28] R. at 163.

[29] R. at 191.

[30] R. at 191.

[31] R. at 191.

[32] R. at 191.

counsel's sentencing argument repeatedly described Appellant's mental health struggles a "mitigating" factor.[33]

The military judge reopened the providence inquiry following Appellant's unsworn statement and trial defense counsel's sentencing argument. The military judge asked questions relating to Appellant's mental health and the potential defense of duress.[34] Appellant stated that while she was struggling with her mental health, she was not planning on killing herself "that day" but rather was "leading to a point where I would have hurt myself."[35] The military judge asked Appellant whether she had no choice but to suffer immediate physical or psychological harm if she did not commit the offense of unauthorized absence, to which Appellant responded, "No, Your Honor."[36]

Additional facts necessary to resolve Appellant's assignment of error are discussed below.

## II. DISCUSSION

### A. Law

"We review a military judge's decision to accept a guilty plea for an abuse of discretion and questions of law arising from the guilty plea de novo."[37] We look at the record as a whole to determine whether there is a substantial basis in law or fact for questioning the guilty plea.[38] "If an accused 'sets up matter inconsistent with the plea' at any time during the proceeding, the military judge must either resolve the apparent inconsistency or reject the plea."[39] A

---

[33] R. at 201-205.

[34] R. at 206-12. We agree with Appellant that "military courts have indicated the duress defense does not apply when the immediate threat to life is" oneself. App. Br. at 14 (citing *United States v. Collins*, 37 M.J. 1072, 1073 (N.M.C.M.R. July 21, 1993); *United States v. Bowling*, No. 200300001, 2003 CCA LEXIS 207, *13 (N-M. Ct. Crim. App. Aug. 29, 2003)). *See also United States v. Barnes*, 60 M.J. 950, 955 (N-M. Ct. Crim. App. 2005)

[35] R. at 208.

[36] R. at 210-11.

[37] *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008).

[38] *Id.*

[39] *United States v. Shaw*, 64 M.J. 462, 463 (C.A.A.F. 2007) (quoting *United States v. Garcia*, 44 M.J. 496, 498 (C.A.A.F. 1996) and Article 45(a), UCMJ, 10 U.S.C. § 845(a) (2000)).

"mere possibility" of a conflict is not sufficient basis to overturn the trial results.[40]

The affirmative defense of lack of mental responsibility requires the accused to prove, by clear and convincing evidence, that at the time of the offense, "(1) the accused suffered from a severe mental disease or defect, and (2) as a result of that mental disease or defect, the accused was unable to appreciate either (a) the nature and quality of [her] acts, or (b) the wrongfulness of [her] acts."[41]

In *United States v. Shaw*, the Court of Appeals for the Armed Forces (C.A.A.F.) held that Lance Corporal Shaw's description of his head injuries and his assertion that he was diagnosed with bipolar disorder in his unsworn statement raised only the "mere possibility" of a conflict with the plea.[42] The C.A.A.F. distinguished its opinion in *Shaw* from its earlier decision in *Harris* where there were two documented, confirmed, but conflicting mental health opinions.[43]

Following *Shaw*, the C.A.A.F. resolved two cases that dealt with a similar mental responsibility issue within the context of a guilty plea. First, in *United States v. Inabinette*, the C.A.A.F. held that the military judge correctly applied the law by inquiring into Sergeant (Sgt) Inabinette's mental responsibility in light of potentially contradictory testimony offered after he had accepted Sgt Inabinette's pleas of guilty.[44] During sentencing, the military judge heard potentially contradictory testimony from Sgt Inabinette's mental health provider and decided to recall the provider to ask whether Sgt Inabinette was able to appreciate the wrongfulness of his actions, to which the provider answered in the affirmative.[45] The C.A.A.F. held that the military judge properly resolved the issue by questioning the provider, which was done "against a backdrop of consistent R.C.M. 706 board findings."[46]

---

[40] *Id.* (Citation omitted).

[41] *United States v. London*, No. 202300131, 2024 CCA LEXIS 545, *7 (N-M. Ct. Crim. App. Dec. 27, 2024) (citing 10 U.S.C. § 850a; R.C.M. 916(k)).

[42] 64 M.J. 460, 464 (C.A.A.F. 2007).

[43] *Id.* at 463-64 (citing *United States v. Harris*, 61 M.J. 391, 392-94 (C.A.A.F. 2005)).

[44] 66 M.J. at 323.

[45] *Id.* at 322.

[46] *Id.* at 323.

Next, in *United States v. Riddle*, the C.A.A.F. affirmed Private (PVT) Riddle's convictions for wrongful use of marijuana and absence without leave despite substantial evidence of mental health issues.[47] The military judge went over PVT Riddle's diagnosis, medication, and her ability to understand right from wrong.[48] The C.A.A.F. found that it could "not say that the military judge was required to explain or discuss the defense of lack of mental responsibility with" PVT Riddle given that: (1) the military judge discussed her mental health with her on the record; (2) there was a supporting mental health examination that found PVT Riddle to be mentally responsible; and, (3) there was no evidence in the record that she lacked mental responsibility at the time the offenses were committed.[49]

Similarly, the appellant in *United States v. Handy* failed to report for duty—he was eventually located after he had consumed "sleeping pills, cocaine, and alcohol" in an attempt to end his life.[50] These facts were elicited during Senior Airman (SrA) Handy's providence inquiry and it was stipulated that he had three diagnosed mental health conditions.[51] The Air Force Court of Criminal Appeals summarized: "the trial judge should have realized that such evidence was sitting there like a mine, just waiting to sink this guilty plea ship unless reckoned with on the record."[52] The military judge in *Handy* did not question defense counsel or SrA Handy regarding these issues.[53] Nonetheless, the Air Force Court affirmed the convictions because "the allied papers contain[ed] a 'sanity board' report" that found that SrA Handy "did not suffer from a mental disease or defect and was mentally responsible at the time of the offense."[54] Moreover, SrA Handy admitted that he knowingly consumed cocaine, which negated any potential defense of partial mental responsibility.[55]

---

[47] 67 M.J. 335, 336 (C.A.A.F. 2009).

[48] *Id.* at 336-38.

[49] *Id.* at 339. (The mental health examination was introduced during sentencing.)

[50] 48 M.J. 590, 591 (A.F. Ct. Crim. App. 1998).

[51] *Id.* at 591-92.

[52] *Id.* at 592-93.

[53] *Id.*

[54] *Id.* at 593.

[55] *Id.*

Recently, in *United States v. London*, this Court set aside Lance Corporal (LCpl) London's guilty plea because the military judge failed to resolve a conflict between his plea and matters raised in his unsworn statement, which were supported by the record.[56] Counsel for LCpl London moved the trial court for a mental competency examination.[57] He subsequently withdrew his motion pursuant to a plea agreement.[58] During his unsworn statement, LCpl London described how he became depressed while in confinement, resulting in him being prescribed high doses of psychoactive medication that caused him to become more agitated, and that this agitation "disappeared" when he discontinued taking the medication.[59] Importantly, despite the Government's opining that additional inquiry may be prudent, no such steps were taken by the military judge.[60]

**B. Analysis**

This is not a close case. Appellant's unsworn statement provided context not contradiction.

The question is not whether Appellant suffered from mental health issues. Rather, the question is whether it is beyond a "mere possibility" that Appellant suffered from a severe mental disease or defect that prevented her from appreciating the wrongfulness of her conduct.

The forensic psychiatrist who conducted Appellant's sanity board concluded that Appellant did not suffer from a severe mental disease or defect and she was able to appreciate the wrongfulness of her actions. This conclusion is consistent with the mental health evaluation that was conducted three months before her misconduct.[61] This conclusion is also consistent with the mental health examination which was completed over a year prior to Appellant's misconduct.[62] Moreover, this conclusion is consistent with Appellant's own statements in the stipulation of fact and with Appellant's statements during her

---

[56] 2024 CCA LEXIS 545, at *10-11.

[57] *Id.* at *3.

[58] *Id.* at *6.

[59] *Id.* at *7.

[60] *Id.* at *11-12. ("'[t]he government, as was mentioned before, believes a 706 inquiry would be a good idea. . . .'"); *see also Id.* at n. 30.

[61] Def. Ex. F.

[62] Def. Ex. J.

providence inquiry.[63] And, lastly, Appellant's trial defense counsel—after properly raising the issue and consulting with Appellant—concurred with this conclusion.[64] The military judge was not required to enter a lengthy, fact specific colloquy with Appellant, particularly when consistent evidence in the record supports the same conclusion.

In her brief, Appellant argues that portions of her unsworn statement raised "serious questions about whether she had the ability to appreciate the wrongfulness of her actions. But the military judge never resolved these questions because he only focused on duress."[65] She added that the "military judge should have at least discussed the mental responsibility defense with Appellant, like in *Riddle*, to ensure the providence of the plea."[66] We disagree with Appellant's fundamental premise: we are convinced that Appellant's unsworn statement did not create any question as to whether she appreciated the wrongfulness of her actions.

Although Appellant was going through mental health struggles, her unsworn statement indicates that she was fully aware of the potential consequences of her actions. Appellant "decided" to leave the ship and drive across the country to her family's home.[67] She recognized that she was out of medication so she decided to purchase and smoke marijuana. Appellant knew "it was possible" that she may go to the "brig" for her misconduct *and* she began to prepare herself mentally for that consequence.[68] Appellant's unsworn statement provided mitigating context to her misconduct and is consistent with the overwhelming evidence that demonstrates she was able to appreciate the wrongfulness of her actions. As we stated in *Inabinette*: "[w]hile one might doubt the wisdom of [her] plan, it does indicate that [she] clearly understood [her] actions were wrong."[69]

---

[63] Pros. Ex. 1; see also R. at 129-32 (Appellant reviewed the stipulation of fact and agreed that its contents were true), R. at 134-44, 206-12.

[64] R. at 122-23, 163.

[65] App. Br. at 14.

[66] App. Br. at 20.

[67] We note that during the providence inquiry, Appellant stated that she notified her superiors that she could no longer stay on the ship. R. at 68.

[68] R. at 191.

[69] No. 200602228, 2007 CCA LEXIS 184, *9 (N-M. Ct. Crim. App. June 12, 2007) *aff'd*, 66 M.J. 320 (C.A.A.F. 2008).

In contrast to Appellant's case, the record in *London* was void of *any* inquiry into LCpl London's mental responsibility despite indications such inquiry was warranted.[70] Similarly, the record in *Harris* had conflicting findings regarding the issue of mental responsibility.[71] Those issues are not present in this record. *London* is therefore readily distinguishable from this case. The consistent evidence of Appellant's ability to appreciate the wrongfulness of her actions and her lack of severe mental disease or defect, combined with her statements during the providence inquiry, the stipulation of fact, and her unsworn statement make this case more akin to *Shaw*, *Inabinette*, *Riddle*, and *Handy*.

Accordingly, we conclude that the military judge correctly applied the law, he sufficiently inquired into Appellant's mental responsibility, and there is no substantial basis to question the providence of her plea.

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[72]

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[70] *Handy*, 48 M.J. at 593; *see also London*, 2024 CCA LEXIS 545, at *10-11.

[71] 61 M.J. at 392-94.

[72] Articles 59 & 66, UCMJ.